THE CHICAGO, KANSAS & WESTERN RAILROAD COM-
PANY v. SUSANNA FRAZER.

1. CONSTRUCTION-TRAIN — *Rights of Passengers.*    As the con-
   ductor in charge of a construction-train is the representative of
   the railroad company and the manager of the train, his action in
   receiving passengers upon such train and collecting fare from
   them ordinarily entitles them to the rights of passengers and to
   such care and attention as can be reasonably given to them upon
   such a train.

2. COMPANY, *When not Relieved from Liability.*    The fact that
   the conductor may have carried passengers without authority from
   the company, and contrary to instructions given him, will not re-
   lieve the company from liability for the failure to exercise due
   care toward those so received as passengers, unless they knew they
   were riding in violation of the rules of the company and had will-
   fully joined with the conductor in committing a wrong against the
   company.

3. ———— *When Relieved from Liability.*    Where the railroad
   company is engaged in the construction of a railroad, and a per-
   son is received as a passenger by the conductor of a construction-
   train, to be carried over the newly-built portion of the road and
   which had not yet been opened for public traffic; and where such
   person has been safely carried to his destination, and to a point
   which was then the end of the railroad, and had been afforded
   almost half an hour to leave the train, the company no longer
   owed him any duty as a passenger, nor was it under any obliga-
   tion to him as such.

4. INSTRUCTION, *Misleading and Erroneous.*    Where it is not
   claimed that there was any omission of duty toward such person
   until after he had reached his destination, nor until after his right
   as a passenger had terminated, an instruction by the court upon
   the duty of the company toward passengers, holding it to the use ·
   of the utmost care and skill within the scope of human foresight,
   and liable for the slightest negligence on the part of its servants
   and agents, is misleading and erroneous.

5. No DEPOT — *no Duty to Passenger, When.*    Where a person
   takes passage upon a construction-train to run over an unfinished
   railroad, and is aware of its incomplete condition, and that the
   track had just been laid to the point of destination, and there had
   not been sufficient time to build a depot or to provide station facil-
   ities at that point, the company does not owe him the duty to

have a suitable depot and platform at the end of the line, and the absence of the same cannot be regarded as negligence toward him.

6. FINDINGS—*Insufficient Evidence.* The testimony examined, and *held* to be insufficient to sustain some of the special findings returned by the jury.

### *Error from Scott District Court.*

ACTION by *Susanna Frazer* against *The Chicago, Kansas & Western Railroad Company* to recover damages for the death of her son who was a passenger on its train. Verdict for plaintiff for $5,000; new trial denied, and judgment rendered accordingly. The defendant company brings the case to this court. The material facts are stated in the opinion herein, filed July 6, 1895.

*A. A. Hurd,* and *J. G. Egan,* for plaintiff in error.

*Travis Morse,* and *E. E. Hubbell,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Susanna Frazer brought an action against The Chicago, Kansas & Western Railroad Company to recover for the death of her son, J. H. Frazer, who, she alleges, was killed while a passenger on a railroad-train of the defendant, by reason of the company and its servants running their train in a careless, reckless and wanton manner, and with gross negligence, into an obstruction which was upon the railroad-track. On July 13, 1887, the Chicago, Kansas & Western railroad was in process of construction, and had been completed from Great Bend to Dighton. Construction-work was going on beyond Dighton, and the railroad-track was then laid as far west as Scott City, but the road had not been opened by the company for either freight or passenger business beyond Digh-

ton. The only trains in operation from Dighton to Scott City were construction-trains, used for carrying employees and material, and those in charge of these trains were directed not to receive or carry any passengers upon them. Notwithstanding this direction, those in charge of the construction-trains sometimes received passengers and collected fares, but the money so received was never accounted for nor paid to the company. On the evening of July 13, 1887, J. H. Frazer boarded what is called the swing- or construction-train, loaded with material, at Dighton. He rode in a caboose which was attached to the train, and which was occupied by employees and a few passengers. He was aware of the fact that the road was unfinished and under construction, and he was aware that the company was not operating passenger-trains on that part of the track, and that the railroad was not open for business further west than Dighton. About five or six days before, track had been laid as far as Scott City, but no depot had been built, nor any station conveniences provided. The Missouri Pacific Railway Company was then building a branch road through that section of the state, and it crossed the Chicago, Kansas & Western railroad at Scott City. On the evening of July 13, 1887, a permanent crossing had not been built, but, instead, temporary provision was made for crossing on the top of the rails of the Chicago, Kansas & Western railroad, and this temporary crossing was in charge of the Missouri Pacific employees. The construction-train on which Frazer rode that evening reached Scott City after dark. It was run past the point of intersection with the Missouri Pacific railway, up to a temporary stopping-place, on the outskirts of Scott City, where the train was met by a 'bus and a dray for the transfer of

passengers and baggage to other parts of the town.
The train remained at this stopping-place for 25 min-
utes, and most, if not all, of the passengers and em-
ployees left the train.   It appears that Frazer did
not ride up town on the first trip, because there was
not room for him and his trunk upon the 'bus, and
parties who were present heard the 'bus-man agree
to return for him.   One of the trainmen, after exam-
ining the caboose to see whether all had left there,
and finding it empty, as he said, locked the same.
A different crew of men then took charge of the con-
struction-train, and started to back it down to the
other side of the Missouri Pacific crossing, which
appears to have been about three-quarters of a mile
east of Scott City.   It appears that, after the con-
struction-train had first passed the intersection with
the Missouri Pacific, the temporary crossing had been
laid down for a Missouri Pacific train and left there,
and the construction-train, which was being backed
at the rate of about seven miles an hour, ran into the
crossing and wrecked the train.   The caboose and
several other of the cars were thrown from the track,
and Frazer was found dead a short distance from the
wreck of the caboose.   His mother, who is the next of
kin, brought this action, and at the end of the trial
the jury found against the company, and awarded
damages to her in the sum of $5,000.

From the testimony, it appears that the conductor,
in opposition to his instructions, sometimes carried
passengers upon the construction-train, and in answer
to a special question the jury found that Frazer paid
the conductor for his ride from Dighton to Scott City.
As the conductor is the representative of the company
and the manager of the train, his action in receiving
passengers upon a construction-train of the company

and collecting fare from them would ordinarily entitle them to the rights of passengers, and to such care and attention as can reasonably be given them upon such a train. The fact that the conductor may have carried passengers without authority from the company and contrary to the instructions given him, will not relieve the company from liability for the failure to exercise due care toward those so received as passengers, unless they knew they were riding in violation of the rules of the company and had willfully joined with the conductor in committing a wrong against the company. Where a person is received as a passenger and pays his fare to one in charge of the train and with apparent authority, without knowledge of any limitation of his authority, such person is justified in assuming that the company occupied the position of a carrier, and would exercise toward him such vigilance and care as the circumstances would permit. The failure of those in charge of the train to exercise that degree of care renders the company liable for resulting injuries to such persons so long as the relation of passenger and carrier exists. In this case, however, that relation only existed between the company and Frazer until the construction-train reached Scott City. When he had been safely carried to his destination, and to a point which was then the end of the road, and had been afforded almost half an hour to leave the train, the company no longer owed him any duty as a passenger, nor was it under any obligation to him as such. It is not claimed that there was any omission of duty toward him until after he reached his destination, nor until his rights as a passenger had terminated; and yet the court charged the jury at length upon the duty of the company toward passengers, and held it to the use of the utmost care and

skill within the scope of human foresight and human knowledge in the operation of its railroad, and liable for the slightest negligence on the part of its servants and agents. In view of the testimony in the case, instructions of this character were unwarranted and were probably misleading. After the train had arrived and abundant time has been given him to leave it, he could not be regarded as a passenger, nor entitled to the extraordinary care that is due to passengers. Although it was not necessary, the men in charge of the train examined to see if all had left the train and finding no one upon it the caboose was closed and locked for the night, and although the jury found that the brakeman who made the examination knew that Frazer remained on the train we can discover no testimony to support that finding. He was undoubtedly upon the train when the accident occurred, but on what part of the train he may have been is not shown, and the finding of the jury is that immediately prior to the wreck he was "in or about the caboose." Frazer was probably on some part of the construction-train when the new crew of men took charge of the same to back it over the crossing, but there is no testimony whatever that any of them knew of his presence on the train, and the jury so found. In the absence of knowledge to the contrary those men had a right to suppose that all passengers had left the train long before that time; and if he was upon the train without their knowledge it is difficult to find that they were guilty of any negligence toward him. If he was a mere trespasser the company owed him no duty except that it should not wantonly or willfully injure him; but such negligence cannot be attributed to the company unless they knew of his presence upon the train. Under the circumstances we think the instruc-

tion was misleading and erroneous. ( *Railroad Co. v. Wheeler*, 35 Kas. 185 ; *Railroad Co. v. Berry*, 53 id. 112. See, also, *Davis v. Railway Co.*, 18 Wis. 185 ; *Imhoff v. Railway Co.*, 20 id. 362 ; *Jenkins v. Railway Co.*, 41 id. 112 ; *Hurt v. Railway Co.*, 94 Mo. 255 ; *Railroad Co. v. Slatton*, 54 Ill. 133 ; *Railway Co. v. Brooks*, 81 id. 245.)

The error of the court was emphasized by another instruction that it was the duty of the company to provide a suitable depot and platform for the accommodation of passengers boarding and alighting from their trains, and any failure on the part of the defendant to provide such depot and platform, if carrying passengers, would be negligence on the part of the defendant. The fact that the road was unfinished was obvious to everyone, and Frazer was undoubtedly aware of its condition when he took passage upon the construction-train at Dighton. The track had just been laid into Scott City, and there had not been sufficient time to build a depot or provide station facilities at that point. Having a knowledge of the incomplete condition of the road, the company did not owe him the duty to have a suitable depot and platform at Scott City, and the absence of the same cannot be regarded as negligence toward him.

The finding that the deceased was on the train with the consent and knowledge of the brakeman, Markell, is not supported by the testimony, and it is difficult to find evidence to sustain some other of the special findings returned by the jury.

For the errors mentioned the judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.