[No. 12887. Department Two. March 7, 1916.]

FRED E. DUVAL, *Respondent*, v. INLAND NAVIGATION COMPANY et al., *Appellants*.[1]

CARRIERS—CARRIAGE OF PASSENGERS—TERMINATION OF RELATION—EJECTION—LIABILITY. Where a passenger remains on a boat for thirty or forty minutes after it arrives at his destination, for the reason that his wife was away and there "was no use to go home," and to talk to a man, he ceases to be a passenger, and liability for his ejection would depend upon whether he was wilfully or wantonly assaulted or whether more force was used than was reasonably necessary.

SAME — EJECTING PASSENGER — TORT OF EMPLOYER — DEFENSES—AIDING OFFICER. Under Rem. & Bal. Code, § 2365, making it the duty of every person to aid an officer in arresting any person if commanded so to do, the owner of a boat is not liable for the acts of the purser in ejecting a person from the boat, if the purser was acting under the direct command of a police officer and aiding him to make an arrest.

TRIAL—MISCONDUCT OF COUNSEL—INSTRUCTIONS. In an action for personal injuries and false arrest and imprisonment, the opening statement, and the persistently asking of questions, bringing before the jury the irrelevant fact that one of the defendants was arrested and convicted of making an assault upon the plaintiff, may easily be so highly prejudicial as not to be curable by instructions.

FALSE IMPRISONMENT—MALICIOUS PROSECUTION—EVIDENCE—NEWSPAPER ACCOUNTS—ADMISSIBILITY. In an action for false arrest and imprisonment, it is reversible error to admit in evidence newspaper articles relative to the arrest which contain matters other than may be ascertained from the charge against plaintiff and the proceedings had thereon, where the defendants were in no way responsible for the publications.

[1]Reported in 155 Pac. 768.

Appeal from a judgment of the superior court for What-com county, Pemberton, J., entered September 25, 1914, up-on the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*Bronson, Robinson & Jones* and *Chas. A. Sather*, for ap-pellants.

*W. P. Brown* and *C. A. Swartz*, for respondent.

MAIN, J.—The purpose of this action was to recover dam-ages for personal injuries, and for false arrest and imprison-ment. The defendants are Inland Navigation Company, owner of the steamship "Kulshan," and G. W. Rimer, the purser upon that vessel.

In the complaint there are two causes of action separately stated, one for personal injuries, and the other for wrongful arrest. After the issues were framed, the cause in due time was tried to the court and a jury. A verdict was returned in favor of the plaintiff in the sum of $750. Motion for a new trial being made and overruled, a judgment was entered upon the verdict. From this judgment the defendants ap-peal.

Inasmuch as there must be another trial of this cause, the facts will be only briefly stated, and without comment. On the evening of November 10, 1913, the respondent, at Seattle, Washington, became a passenger on the steamship "Kul-shan," intending to go to the city of Bellingham, which was one of the termini of the steamship's route. After getting aboard the vessel, he occupied a stateroom until about 6:30 the following morning, when he arose and went to the men's smoking room, which was in the bow of the boat below. When the boat called at Anacortes that morning, one Charles P. Bauer came aboard for the purpose of going to Bellingham. The respondent and Bauer had not previously been acquaint-ed, but engaged in conversation in the swoking room until the boat arrived at the dock in Bellingham, and for some thirty or forty minutes thereafter. There were in the smoking

room some eight or ten other passengers, two of whom were somewhat intoxicated. There was a bar in or adjacent to the smoking room, with one Kelly as bartender.

When the boat arrived at the Bellingham dock, all the passengers upon the boat, including those in the smoking room, with the exception of the four mentioned, left the boat. The time which it took for the passengers to disembark consumed approximately four or five minutes. After the four which remained in the smoking room had been there for a period of thirty or forty minutes, they were forcibly ejected therefrom; the respondent and Bauer in charge of the purser, and the other two in charge of a police officer who was in the employ of the Citizens' Dock Company. As to whether the four had been invited to leave and had a reasonable opportunity to do so prior to the ejectment, the evidence is conflicting. After their ejectment they were taken by the police officer to the station, where charges were filed against each of them, and they were imprisoned for a few hours. Upon a hearing, the respondent and Bauer were, by the justice, discharged. Thereafter the respondent caused the arrest of the pursuer, Rimer, upon the charge of assault in the third degree. The present action was brought for the purposes above indicated.

It is claimed by the appellants that, at the time of his ejectment from the boat, the respondent had ceased to be a passenger, and that no duty was owing to him as such. The respondent claims that the relation of carrier and passenger continued until he had notice to leave the boat. The rule is that the relation of passenger and carrier ceases when the passenger is made aware of the arrival at the place of destination, and has had reasonable time to get off the boat or train. *Imhoff v. Chicago & M. R. Co.*, 20 Wis. *344, 362; *Georgia & F. R. Co. v. Thigpen*, 141 Ga. 90, 80 S. E. 626; *Chicago, K. & W. R. Co. v. Frazer*, 55 Kan. 582, 40 Pac. 923.

In 2 Hutchinson, Carriers (3d ed.), § 1016, the rule is stated thus:

"As a general rule, it may be said that the relation of carrier and passenger does not cease with the arrival of the train at the passenger's destination, but continues until the passenger has had a reasonable time and opportunity to safely alight from the train at the place provided by the carrier for the discharge of passengers, and to leave the carrier's premises in the customary manner."

If the passenger remains upon the train or boat of the carrier an unreasonable time after reaching his destination, and after being afforded a reasonable opportunity to alight, he is no longer a passenger. In 4 R. C. L., p. 1043, § 497, it is said:

"As a general rule, however, one who remains on the carrier an unreasonable length of time after reaching his destination, and being afforded a safe opportunity to alight, is no longer a passenger."

In *Chicago, K. & W. R. Co. v. Frazer, supra*, it is said:

"When he had been safely carried to his destination, and to a point which was then the end of the road, and had been afforded almost half an hour to leave the train, the company no longer owed him any duty as a passenger, nor was it under any obligation to him as such."

In this case, from the respondent's testimony, it appears that he remained upon the boat, not because he did not know that it had landed, but because his wife was at Ferndale, and "there was no use to go home," and that he remained on the boat about thirty minutes for the reason stated, and for the further reason that he wanted to talk to Bauer. It is obvious that the respondent had ceased to be a passenger at the time he was ejected, and the jury should have been so instructed. The relation of passenger and carrier having ceased, the respondent became in effect a trespasser, and liability could only be predicated upon the manner of his removal. If he was wilfully or wantonly assaulted, and more force was used in accomplishing his ejectment than was reasonably neces-

sary, he had a cause of action. *Houston & T. C. R. Co. v. Cohn*, 22 Tex. Civ. App. 11, 53 S. W. 698; *Fanning v. St. Louis Southwestern R. Co.*, 38 Tex. Civ. App. 513, 86 S. W. 354.

It is true that, in the cases cited, the carrier was a railway company; but the principle must be the same when it is applied to a carrier by water. What may be the exact formula of the rule relative to the duty of a carrier to call out the stations so that a passenger may have an opportunity to know that the place of his destination has been arrived at, it is not necessary here to inquire. The respondent knew that the boat had docked at Bellingham and that the other passengers had departed from the boat. He remained aboard for a period of thirty or forty minutes for purposes of his own.

Upon the question whether the purser in ejecting the respondent and his companion from the boat was acting in his capacity as an officer of the vessel, or was acting under the command of the police officer, Dodd, the evidence is conflicting. Under Rem. & Bal. Code, § 2365 (P. C. 135 § 225), it is the duty of every person, after having been lawfully commanded so to do, "to aid an officer in arresting any person, or in retaking any person who has escaped from lawful custody, or in executing any lawful process." Neglect or refusal to perform this duty in aid of the officer constitutes a misdemeanor. The court, in submitting this question to the jury, doubtless through inadvertence, left out of the instruction one clause which appears in the statute, thereby changing the meaning somewhat, and making the instruction hardly applicable to the facts in the case. If the purser was acting under the direct command of the police officer, and not as an officer of the boat, his conduct, whatever it may have been in the manner of the ejectment, would not render the owner of the vessel liable.

During the opening statement to the jury, counsel for the plaintiff stated, over the objection of the appellants, that the respondent had caused Rimer, the purser, to be arrested for

the crime of assault in the third degree, and that he was tried before Judge Beach, a justice of the peace, and found to be guilty. During the course of the trial, the respondent sought to show the arrest and conviction of Rimer. This was objected to, and the objection was sustained. Subsequently, when Judge Beach was upon the stand, the matter was again inquired into, and the objection to the question sustained. Counsel for the respondent persisted in asking the questions upon the pretense that he desired to make a record, thus forcing the other side to object. When objection was made to the opening statement, the court stated to the jury that the statement was not evidence, and that it was only what counsel expected to prove. When the objectionable questions were asked, the jury were told not to consider the statements of counsel unless supported by the testimony in the case. And in the formal charge to the jury, they were told to consider the case solely upon the evidence which the court had admitted.

Rimer's arrest and conviction was totally irrelevant to any issue in the case. As we understand the respondent's brief, it is not claimed that it was relevant or material. But it is claimed that whatever error may have been committed in the opening statement, and in the questions asked, was cured by the court's instructions. Whether the error was cured, it is not necessary here to determine, as upon a retrial the error will doubtless not occur. It may be said, however, that in bringing before the jury in an opening statement facts which are entirely irrelevant to the issues to be tried, and deliberately interrogating witnesses concerning a matter which has no bearing upon the issues, may easily be so highly prejudicial as not to be curable by instructions.

After the plaintiff was arrested, there appeared in the Bellingham Herald, a newspaper published at Bellingham, in the issue of November 11, an article relative to the arrest, and the cause thereof. In an issue of the same paper of November 12, there appeared another article. These newspaper

articles in their entirety were admitted upon the trial over
the objection of the appellants.   The articles contained more
than could be ascertained from the complaint charging the
offense, and the proceedings had thereon.   There is no evi-
dence that the appellants were responsible for either of these
publications, except in so far as they state facts which could
be ascertained from the arrest and trial.   In actions for ma-
licious prosecution or false arrest, a newspaper article may
be admitted for the purpose of showing the fact of publicity
given to the charge.   But if the article contains matters other
than may be gleaned from the charge and the proceeding
thereon, it is not admissible, in the absence of a showing that
the defendant in the action was responsible in some degree
for its publication.

In *Baer v. Chambers*, 67 Wash. 357, 121 Pac. 843, Ann.
Cas. 1913 D. 559, upon a similar question this court said:

"Now in the case before us, there is no evidence indicating
that appellant was responsible for any of these publications,
save in so far as they stated facts which could be ascertained
from the complaint made before the justice charging the re-
spondent with the crime, the warrant of arrest, and his ar-
rest thereunder.   In view of these facts, anything else con-
tained in these publications, we think, would be irrelevant,
though such additional matters might possibly be rendered
relevant if shown to have been published at appellant's in-
stance."

If newspaper articles be so framed that they cannot be
read without introducing objectionable matter, they must be
excluded.   But it is competent to have it appear before the
jury that the fact of the arrest was published in the paper.
In *Fletcher v. Chicago & N. W. R. Co.*, 109 Mich. 363, 67
N. W. 330, it is said:

"So far as this article stated the fact of the arrest, it was
admissible, under the authorities; but, in so far as it stated
what the company proposed to do, it was clearly incompetent.
There was nothing to show that the article was prompted by
the company, or by an agent thereof.   It may have furnished

the entire reason for the jury to find that Mr. Houle was authorized by the company to make the complaint. If such article be so framed that it cannot be read without introducing the objectionable matter, it must be excluded; but it would be competent to have it appear before the jury that the fact of his arrest was published in the paper."

The introduction in evidence of these newspaper articles was prejudicial error.

The judgment will be reversed, and the cause remanded with direction to grant a new trial.

Morris, C. J., Parker, Bausman, and Holcomb, JJ., concur.