Charles E. Barr, Appellee, v. Clinton Bridge Works et al., Appellants.

APPEAL AND ERROR: Review—Questions of Fact, Verdicts and
1 Findings. The verdict of a jury on irreconcilable testimony is final on appeal.

MASTER AND SERVANT: Service and Compensation—Perform-
2 ance of Services—Acceptance—Effect. The plea by a master of failure of performance on the part of a servant will not be entertained when the master admits that he accepted the services rendered and, without deduction or counterclaim, paid therefor what he deemed was due.

ACCORD AND SATISFACTION: Part Payment—Liquidated and
3 Unliquidated Claim. The payment of an admitted or liquidated claim furnishes no consideration for an accord and satisfaction of another claim which is in dispute, though stated to be "in full" (of all indebtedness), especially where the creditor specifically states that he will not receive the payment in satisfaction of the disputed claim.

PRINCIPLE APPLIED: Admittedly, plaintiff had, for some years, been in defendant's employ at a salary of $300 per month. The dispute was whether the contract called for an additional $200 per month, payable at the end of each year. The $300 was

paid regularly.  Plaintiff sued for the $2,400 deferred payment due, as he claimed, at the end of a certain year.  Just before the close of said year, defendant gave plaintiff a check for $600, marked "in full," and plaintiff took and cashed the same without objection, according to defendant's testimony.  Admittedly, this $600 was for monthly salary.  Plaintiff claimed that, when he received the check, the defendant stated that said amount was all that was due plaintiff, and that plaintiff immediately disputed such assertion and asserted that defendant was also owing him the $200 per month deferred payment.  He says he did not notice the words "in full" on the check.  Held not to constitute an accord and satisfaction of the controversy over the $200 per month deferred payment.

TRIAL:    Conduct of Counsel—Improper Argument.  Indulging, in argument, in inflammatory remarks, though largely foreign to the issue on trial, does not necessarily demand a reversal.  So held where counsel, on the trial of an action by an employee for unpaid salary, referred to the numerous times one of the defendants had, as he claimed, been indicted with reference to business deals with the county, objections to such reference being promptly sustained.

TRIAL:    Conduct of Counsel—Argument—Far-fetched Deductions.  Considerable latitude will be accorded to counsel in argument in drawing deductions from the testimony introduced.

*Appeal from Clinton District Court.*—M. F. DONEGAN, Judge.

. THURSDAY, MARCH 15, 1917.

ACTION at law to recover upon contract for services rendered.  Verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*Clarke & Claussen,* for appellants.

*Wolfe & Wolfe* and *C. H. George,* for appellee.

WEAVER, J.—The plaintiff alleges that the Clinton Bridge Works and the Clinton Bridge & Iron Works are different names for one and the same corporation; that, on December 24, 1910, he made an oral contract with said cor-

poration whereby he entered into service as a salesman for the period of 5 years at an annual salary of $6,000, payable in monthly installments of $300 each, and the remainder of $2,400 at the end of each year. He further alleges that he entered upon said service under said contract and continued therein until December 1, 1913, when, by reason of changes in business conditions, the parties mutually agreed or consented that the contract between them should terminate on the date named. He also says that, during all such period after the making of the contract, from the date thereof to the close of the year 1911, the defendant paid him the agreed salary of $6,000 per year in full; and for the remainder of the period up to the termination of his service, defendant also paid the monthly installments of $300, but neglected and has since refused to pay the additional sum of $2,400 per year. Basing his claim upon these alleged facts, plaintiff avers that the unpaid portion of his agreed salary amounts to $4,823, for which he demands judgment.

The defendant admits that plaintiff was employed in its service and that it paid him $300 per month during the years 1912 and 1913, and denies all other allegations of the petition. It further pleads as an affirmative defense that, on November 3, 1913, it made and delivered to plaintiff its check for $600 in full payment for all services rendered by him to December 1, 1913, which payment he then and there received and accepted in full for his claims and demands on that account. By way of amendment, defendant further pleads that, during the year 1912, and for two months in the year 1913, plaintiff was sick and unable to render any service under his contract, and that defendant paid him in full for all services actually rendered. It further alleges that plaintiff did not give all his time to its service, but, without defendant's consent, devoted much of his time to his own personal affairs.

Replying to the answer, plaintiff denies all its affirmative allegations. He admits, however, that he was sick during a part of the year 1912, but says he still continued to render service under his contract. He also admits that he was absent from Clinton during a part of the year 1913, but avers that he was absent at the order and request of the defendant, and was at all times subject to its orders and directions. He further alleges that it was a condition of his employment that defendants had the reserved right to terminate the contract and discharge the plaintiff by giving him due notice to that effect; that defendant did not act upon such reserved right, but had continued without objection to pay him the monthly installments of his salary, and that, by reason thereof, it is now estopped to allege or rely upon his temporary sickness as a defense to his demand for full payment according to the terms of their agreement.

I. Upon the question whether an oral contract of employment was entered into substantially as alleged in the petition, the testimony on the trial was in irreconcilable conflict. The verdict of the jury involves a finding in plaintiff's favor on this issue of fact, and for the purposes of this appeal, the making of the contract must be considered as established. It may also be added that the dealings with plaintiff appear at all times to have been conducted on the part of the corporation by George Wilson, Senior, and George Wilson, Junior, or by one of them, and what we have said in regard to the conflict of evidence between the parties applies to nearly every fact bearing upon the controversy. It appears that plaintiff entered the employment of the defendant as early as the year 1900, and continued therein until their relations were severed in December, 1913. Up to the year 1910, there appears to have been a yearly hiring, and for some of the years, the agreements were reduced

1. APPEAL AND ERROR : review : questions of fact, verdicts and findings.

to writing; and, according to plaintiff, his salary had been increased from time to time until December 24, 1910, when it was adjusted as alleged in the petition. The Wilsons insist that the agreement so made was for $300 per month and no more. The plaintiff's theory finds incidental support in his testimony that, for the first year after said hiring, defendant paid him the full agreed salary of $6,000—a statement which we do not find denied by the Wilsons. There was also evidence by two witnesses to the effect that the elder Wilson, before any controversy arose, admitted that plaintiff was receiving $6,000 per year.

2. MASTER AND SERVANT: service and compensation: performance of services: acceptance: effect.

It is suggested, however, on the part of defendant that there was a failure of evidence of performance by the plaintiff. But the defendants themselves as witnesses concede that plaintiff continued in their employment up to December 3, 1913, and, although they say he lost considerable time by sickness and otherwise, they still concede that they continued to pay him what they claim to have been his full agreed salary up to that date, without any deduction or counterclaim. In other words, on their own theory they accepted the service rendered by him as performance, and the only matter of dispute between them at the end of the service was upon the matter of plaintiff's claim that defendant had agreed to pay him at the end of the year a sum in excess of $300 per month.

We are satisfied that, to say the least, the evidence of performance on part of the plaintiff was sufficient to require the submission of that question to the jury.

3. ACCORD AND SATISFACTION: part payment: liquidated and unliquidated claim.

II. The one serious question in the case, and the one on which the defense largely relies, is raised by the appellant's plea of accord and satisfaction. In support of this plea, George Wilson, Jr., testifies that, on or

about November 3, 1913, plaintiff came to him to draw his salary for the month of October, and, saying he was need-ing money, asked also to be advanced his salary up to De-cember 1st, the date on which he was to retire from defend-ant's service. To this, Wilson says he agreed, and told plain-tiff to call within a few days and he would have the check ready. In pursuance of this talk, the witness testifies, he made out and delivered to plaintiff a check in the following form:

"Clinton Bridge and Iron Works

To Dec. 1, 1913,                    Clinton, Iowa, Nov. 3, 1913.

In full.                                              No. 5034

    Pay to the order of C. E. Barr            $600

Six hundred and no-100                         dollars.

Payable if preferred at Corn Exchange Nat. Bank, Chicago,
    Ill.

To Merchants National Bank, Clinton, Iowa.

                        Clinton Bridge and Iron Works,

                              By G. E. Wilson, Jr."

According to his statement, plaintiff accepted the check without objection or protest, and without any sug-gestion that anything more was due him. It is conceded that the check was cashed by plaintiff.

According to plaintiff's story, he told Wilson he was needing money, and Wilson gave him the check for $600, saying, "That is all we owe you." This the plaintiff dis-puted, and told Wilson the company was owing the de-ferred payments of $2,400 per year. Wilson denied it, and denied that there was any agreement of that kind. Plain-tiff testifies that in taking the check he did not notice the words "In full," written thereon, that he noticed only the amount for which the check was drawn—$600—and took it, protesting to Wilson that defendant was still owing him the deferred installments of $200 per month for the years 1912 and 1913. He also says that, when this question of the

amount of his unpaid salary arose between him and the younger Wilson, and the latter gave him the check, Wilson said, "I know that is all right. I will give you $600. Father is away; he is not here." It is shown elsewhere that the salary agreement, whatever its terms may have been, was made between plaintiff and the elder Wilson, the son not being present; and if the reference to the absence of the former was made by the son at the time the check was given, as claimed by the plaintiff, it was not without some significance upon the question whether such check was given or received with the intent that it should be regarded as full and final payment of the plaintiff's salary.

Defendant invokes the benefit of the rule that, where a person owing an unliquidated or undetermined claim tenders a stated sum, to be accepted as full payment and satisfaction of the claim, and the creditor accepts such tender, both parties are bound thereby, and the creditor cannot thereafter recover more, even though, had he refused the tender, he might have shown himself entitled to a larger amount. Within its expressed limitations, the soundness and propriety of the rule is not open to question. Ordinarily, where there is a promise to pay a stated sum of money for a given consideration, as, for example, for the price of property purchased, or compensation for service rendered, the claim or debt thus created is not "unliquidated," within the rule cited by this appellant. In the case before us, there was concededly a contract for plaintiff's services at an agreed salary of at least $300 per month, and the jury has found by its verdict that there was also a contract for an additional sum, payable at the end of the year. Appellant pleads and contends that it has paid plaintiff at the rate of $300 per month for all the time he was in their service under the last agreement between them. The plaintiff admits it. Both agree that under such oral contract plaintiff was to be paid $300 per month. The only material dis-

agreement between them now is upon the question whether, at the end of the year, plaintiff was to be paid an additional sum, a stipulation which the jury finds was in fact made.  Now the amount actually paid was not in dispute, and, such being the case, we are of the opinion that the defendant, in giving its check therefor, stating the same to be "in full," cannot plead or rely upon its acceptance as a satisfaction or discharge of another item or claim which is the subject of dispute between him and the payee, and this must assuredly be true where the payee takes it with the express notice that he does not and will not recognize it as a satisfaction of anything but the admitted indebtedness.  The payment of an admitted or liquidated claim furnishes no consideration for an accord or satisfaction of another claim which may be the subject of dispute between the parties. *Wilson v. Palo Alto County,* 65 Iowa 18, 24; *Walston v. Calkins Co.,* 119 Iowa 150; *Demeules v. Jewell Tea Co.,* (Minn.) 114 N. W. 733; *Martin v. White,* 40 Ill. App. 281. Even a receipt "in full" is open to explanation and inquiry into the consideration therefor.  Any rule which would allow the creditor's acceptance of payment of an admittedly just demand to work an estoppel against his right to a hearing upon a claim which is not admitted, would work manifest wrong, and be without support in sound principle. The declaration of a debtor in making a payment of that character that it is "in full," or the arbitrary insertion of those words in a check given for such payment, can have no effective force except to evidence a satisfaction of the very claim paid.  *Duluth Chamber of Commerce v. Knowlton,* (Minn.) 44 N. W. 2; *Kistler v. Indianapolis & St. L. R. Co.,* 88 Ind. 460; *Mortlock v. Williams,* (Mich.) 43 N. W. 592.

The cases cited by appellant on this question deal in each instance with claims which are clearly unliquidated, and in none of them is found any precedent or authority

for the proposition that payment of a conceded debt affords any consideration for the compromise or satisfaction of another claim which is not conceded.

The trial court did not err in overruling defendant's motion for a directed verdict. It may also be said that the court's 11th and 12th instructions to the jury are as favorable, if not more favorable, to the defense than it was entitled to ask, under the rules of law to which we have referred, and they contain no error of which appellant can complain.

III. Defendant made the alleged misconduct of plaintiff's counsel one of the grounds assigned for a new trial. The matter complained of in the motion is that P. B. Wolfe, appearing for plaintiff, said, in his opening statement to the jury and in his closing argument, that the younger Wilson and the defendant had been indicted eight times with reference to some of their dealings with the county and had settled the charges against them by payment to the county of a large sum of money. The motion further shows that the statement was objected to by defendant's counsel, and that the objection was sustained by the court. In resistance to the motion, Mr. Wolfe made affidavit admitting that he said to the jury in substance that he expected to show the indictment of defendants, and that this statement was objected to and the objection sustained. He further says that, when this statement was made, one of the Wilsons volunteered the statement to the court and jury that the words of counsel were false and could not be proved, and counsel responded to the assertion, saying that if the court permitted he would produce the evidence. Counsel further testifies that what he said in his closing argument was justified by the examination of the elder Wilson as a witness on the trial. Some of the statements attributed to counsel, he denies having made.

*4. TRIAL: conduct of counsel: improper argument.*

It may be conceded that counsel for plaintiff in his zeal transgressed the bounds of propriety, but we think there is no reason to believe that defendant suffered any prejudice therefrom. Unfortunately, the alleged offensive language was not taken down or preserved by the official reporter, and it is brought into the record by the use of affidavits of interested parties and counsel, aided to some extent by bystanders and jurors. We interfere with reluctance with the result of a trial upon grounds so shown, and only upon a convincing showing of error and prejudice. It is conceded that defendant's objection to the opening statement was sustained by the court, and we think it must be presumed that the jury gave attention to the ruling and was not misled thereby to the defendant's prejudice. The added remark by counsel after the ruling was made was clearly called out by Wilson's improper declaration to the court and jury, and affords no ground for an assignment of error.

5. TRIAL: conduct of counsel: argument: far-fetched deductions.

The remark or statement by counsel in closing was relevant to the theory of plaintiff that some of the time which defendant was saying he had lost was when he had been sent away from home by the defendants, pending a grand jury investigation of charges against the parties, or some of them. Witnesses had been interrogated along this line, and, while the facts elicited may not have shown the truth of the claim made by plaintiff, the deductions therefrom by counsel in argument do not necessarily constitute an abuse of professional privilege requiring the setting aside of the jury's verdict. The trial court was in position to know with reasonable certainty whether prejudice had resulted; the motion was addressed to its sound judicial discretion; and we are not disposed to disturb its finding.

We discover no error in the record calling for a reversal, and the judgment below is therefore—*Affirmed.*

GAYNOR, C. J., LADD, EVANS and PRESTON, JJ., concur.