448 P.2d 201

Gerald MATTSON, Guardian ad Litem for Walter Wamsley, Christy Wamsley, Michele Wamsley, and Lilas Wamsley, Plaintiffs-Respondents,

v.

James C. BRYAN, Defendant-Appellant.

No. 10016.

Supreme Court of Idaho.

Dec. 2, 1968.

**588**

Brown, Peacock & Keane, Kellogg, for appellant.

Paul C. Keeton and D. K. Worden, Jr., Lewiston, for respondents.

SMITH, Chief Justice.

Respondents (plaintiffs) Wamsleys, minors, brought this action by their guardian ad litem for recovery of damages on account of the alleged wrongful death of their mother, Marian Wamsley, aged 38 years. The death of Mrs. Wamsley resulted January 15, 1966, when an automobile in which she was riding, driven by appellant (defendant) James C. Bryan, collided with a truck, driven by one Udell Anderson. The present appeal is from a judgment of $44,500 entered on the verdict returned by the jury against appellant in favor of respondents and from an order denying appellant's motion for a new trial.

Marian Wamsley divorced her husband, father of the children, during the year 1961. Mrs. Wamsley was the custodian of the children. Her income was $240 a month which she received as child support money from her former husband. For some time prior to her death she had been attending a teacher's normal school or college in Lewiston, Idaho; she had not as yet received a teacher's certificate.

Appellant, a married man, had met Mrs. Wamsley two or three times prior to the night January 14–15, 1966. Appellant did not reveal his marital status to Mrs. Wamsley.

During the evening in question, appellant met Mrs. Wamsley about 9:00 p.m., in a Lewiston night club. Appellant testified Mrs. Wamsley had been drinking prior to her arrival at the club, and that while there he had a beer and she a mixed drink; that they then proceeded to Ahsahka, where they purchased three beers which they consumed in appellant's automobile; that they next proceeded to a club in Orofino where appellant had a beer and she a mixed drink; that upon leaving the club in Orofino, they parked a while at a closed service station, and then purchased gasoline at another station in Orofino; that during the return trip toward Lewiston, both slept from time to time, in appellant's car parked by the side of the highway. Appellant further stated that while Mrs. Wamsley did not object to his driving, she did say, addressing appellant, "You are sleepy and you are tired. Would you let me drive"; and again, that she stated, "she knew I was tired and says, 'How about me driving? Can I drive?' I said, 'no, I will drive my own car.'"

Appellant further testified that as to the rest of the trip Mrs. Wamsley intermittently slept with her head on the front seat; that she was "more or less intoxicated," and at the time of the accident he, appellant, did not know if Mrs. Wamsley was awake or asleep.

At approximately 6:00 a.m. of January 15, appellant, proceeding in a westerly direction, on U. S. Highway 95 about 3½ miles east of Lewiston, collided head-on with the truck. The accident occurred in the eastbound lane, which was appellant's left-hand, and wrong, lane of traffic. Mr. Anderson, driver of the truck, testified that appellant's automobile, after having been operated in an erratic manner, suddenly

veered into his (Anderson's) lane of traffic, where the two vehicles came together. Both vehicles left skid marks—the bread truck 32 feet 6 inches and appellant's vehicle 57 feet 6 inches.

Appellant testified he had no recollection of the cause of the accident; that the last he remembered Mrs. Wamsley was lying with her head on the front seat of his automobile. He stated he might have gone to sleep at the wheel or he might have "blacked-out"; that he had had blackouts as a result of a 1965 industrial accident; that these blackouts had occurred on one or two previous occasions while he was driving, but that Mrs. Wamsley had no knowledge of such affliction.

Mr. Bishop, an investigating officer, testified that at the time and place of the collision, the road was very slick. Officer Bishop also stated that in his opinion appellant was intoxicated at the time of the accident.

Respondents, in their complaint, alleged that at the time of the collision Mrs. Wamsley was a passenger in a motor vehicle owned and operated by appellant and that the accident was the direct result of appellant's intoxication, his gross negligence in driving on the wrong side of the highway in the face of visibly oncoming traffic, and his failing to take even slight care to avoid the collision.

Appellant, in his answer, after denying the material allegations of the complaint, affirmatively pleaded that Mrs. Wamsley knew, or should have known, that appellant had imbibed intoxicating beverages immediately prior to the accident; that hence she assumed the risk of any injury in riding with appellant and such conduct was imputed to respondents; that she knew at the time of the accident appellant was sleepy or groggy and therefore she assumed the risk of any injury by riding with him, which conduct was imputed to respondents.

On voir dire examination appellant's counsel asked a prospective juror whether he would be prejudiced against a married man going out with a woman not his wife. The trial court sustained respondents' objection to the question, which ruling appellant assigns as error.

Appellant contends that such ruling unduly restricted the scope of his voir dire examinations—that because of the ruling he could not inquire into the juror's state of mind concerning the subject matter of the question. He points to evidence adduced at the trial which shows that he was a married man in company with a woman not his wife during the evening the accident occurred. He contends that such showing resulted in the jury being prejudiced against him, and that such prejudice contributed inter alia to the rather large amount of the verdict awarded in respondents' favor.

I.R.C.P. 47(a) provides that "(t)he court shall permit the parties or their attorneys to conduct the examination of prospective jurors under its supervision." I.C. § 19–1905 states that "(t)rial juries for criminal actions are formed in the same manner as trial juries in civil actions."

The basic rule on voir dire examination is set forth in the recent assault and battery case of State v. McKeehan, 91 Idaho 808, 430 P.2d 886 (1967). Although that was a criminal case and the one here is a civil case, I.C. § 19–1905 indicates that in this area no distinction is to be drawn on a criminal-civil basis. In that case, the trial judge sustained an objection to a question by counsel on voir dire examination as to whether a prospective juror entertained any bias or moral compunction about physical violence which would cause her to be prejudiced against one charged with aggravated battery. This Court in holding that such ruling did not constitute reversible error, stated:

"The rule in this jurisdiction is that great latitude is allowed in the examination of veniremen upon their *voir dire* for the purposes of determining whether there is sufficient ground to challenge the veniremen for statutory cause, I.C. §§ 19–2017 to 19–2022, *or* whether it is expedient to challenge them peremptorily, I.C. §§ 19–2015 and 19–2016. The scope

of *voir dire*, examination of veniremen in a criminal case, however, is a matter resting in the discretion of the trial court, the exercise of which will not be reversed except in case of abuse. State v. Miller, 60 Idaho 79, 88 P.2d 526; State v. Hoagland, 39 Idaho 405, 228 P. 314. See especially, Frame v. Grisewood, 81 Nev. 114, 399 P.2d 450 (1965) [a civil case]."

In State v. McKeehan, supra, counsel was permitted to ask jurors whether the mere charge of battery in itself would prejudice them against the accused. The McKeehan case thus is consistent with State v. Miller, supra, which held that the trial judge committed reversible error in sustaining an objection to a question regarding prejudice against the use of intoxicating liquors when the issue concerned driving while intoxicated. The rule emerges from those cases, that although interrogations on voir dire cannot require prospective jurors to take a particular view of evidence to be adduced at trial, the inquiries may ascertain whether the fact of the accusation of a particular offense elicits any prejudice on their part.

In the case at bar the question of prejudice against a man consorting with a woman other than his wife did not concern the legal question of alleged gross negligence in the operation of a motor vehicle, but concerned certain other evidentiary facts which might later be adduced at trial. It now appears that it was important, from appellant's standpoint to ascertain, if possible, any personal prejudice or animosity that any one or more of the prospective jurors might have in event the evidence would disclose that appellant had been consorting with a woman other than his wife on the night the accident occurred. The record, however, fails to disclose that the fact such evidence might be adduced was ever called to the trial judge's attention; this is not contained in the pleadings. If appellant felt this was sufficiently important to securing a wholly unprejudiced and fair-minded jury, he should in some manner have acquainted the trial judge with the reason why it was deemed important that this particular question be answered. Without a showing that the trial court was thus timely advised, the ruling was not reversible error.

This holding is in accord with those of other jurisdictions which have considered the effect of sustaining or overruling similar questions on voir dire. See 99 A.L.R.2d 7. In instances where the objections to questions concerning more or less immoral activities were sustained, the courts on review, have taken the view that jurors were being asked hypothetical questions which concerned facts which might be developed by the testimony at trial. See State v. Sheppard, 100 Ohio App. 345, 128 N.E.2d 471, 60 Ohio Op. 298 aff'd 165 Ohio St. 293, 135 N.E.2d 340, 59 Ohio Op. 398, cert. den. 352 U.S. 910, 77 S.Ct. 118, 1 L.Ed.2d 119, reh. den. 352 U.S. 955, 77 S.Ct. 323, 1 L.Ed.2d 245 (Ohio 1955); Commonwealth v. Van Horn, 188 Pa. 143, 41 A. 469 (1898); Hughes v. State, 109 Wis. 397, 85 N.W. 333 (1901); People v. Rigney, 55 Cal.2d 236, 10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186 (1961). Those cases have application to the present case wherein the evidence developed the fact that appellant was a married man in company with a woman not his wife during the evening the accident occurred. The other line of cases in this area holds that the trial court did not err in overruling objections to questions similar to the one propounded herein on voir dire examination. State v. Greene, 74 R.I. 437, 60 A.2d 711 (1948); Jones v. People, 23 Colo. 276, 47 P. 275 (1896); State v. Farley, 48 Wash.2d 11, 290 P.2d 987, cert. den. 352 U.S. 858, 77 S.Ct. 79, 1 L.Ed.2d 65 (1955). Cf. State v. Pettit, 33 Idaho 326, 193 P. 1015 (1920).

Appellant assigns as error the refusal of the trial court to grant his motion for mistrial when respondents' counsel, in his opening statement, made reference to appellant's prior plea of guilty to an involuntary manslaughter charge arising out of the same

collision.[1] Respondents' counsel, in cross-examination of appellant, also referred to the criminal proceeding and to appellant's conversations with police officers. Respondents later abandoned this tactic and adduced no proof of the guilty plea. Appellant claims it was error to allow respondents to relate facts to the jury in the opening statement, and then fail to adduce proof thereof, in that such prevented appellant's explanation of the facts.

■ Had respondents adduced proof of the guilty plea, the plea would have been admissible as an admission by a party against interest. This Court considered the question of admissibility in Koch v. Elkins, 71 Idaho, 50, 225 P.2d 457 (1950). There, the question was whether a plea of guilty to a criminal charge of reckless driving could be introduced in a subsequent civil action for recovery of damages for personal injuries. The Court, citing authority, held: "A plea of guilty to a criminal charge, which alleges facts that are in issue in a civil action, is admissible against the party entering the plea as an admission against interest."[2]

However, respondents adduced no proof as to this plea. Appellant contends that since respondents brought before the jury that which was not proved, such constituted reversible error. The issue thus is whether the remarks included in the opening statement of respondents' counsel, so inflamed the jury that appellant's motion for mistrial should have been granted, and whether any prejudice on the part of the jury could subsequently be cured by an instruction to the jury.

The effect of the mention by counsel, of prior criminal or civil proceedings in the course of later proceedings has been considered in other jurisdictions. Some courts have held such to be reversible error, while others have held it either not error or error correctible by instructions. 118 A.L.R. 543. An example where reversal was thought necessary is Duval v. Inland Navigation Co., 90 Wash. 149, 155 P. 768 (1916). There, in an action for damages for personal injuries and false arrest, plaintiff's counsel stated that defendant's agent had been arrested and found guilty of assault. The court stated, as dictum (since there were other errors requiring reversal), "* * * bringing before the jury in an opening statement facts which are entirely irrelevant to the issues to be tried, and deliberately interrogating witnesses concerning a matter which has no bearing upon the issues, may easily be so highly prejudicial as not to be curable by instructions." Cf. Fisher v. Pennsylvania Co., 34 Pa.Super. 500 (1907). On the other hand, no reversal was held necessary in the case of Barr v. Clinton Bridge Works, 179 Iowa 702, 161 N.W. 695 (1917). In that action on a contract, plaintiff's counsel remarked in his opening statement that defendant had been indicted eight times previously for his dealings. The appellate court refused to reverse on grounds of prejudice, stating, "It is conceded that defendant's objection to the opening statement was sustained by the court, and we think it must be presumed that the jury gave attention to the ruling and was not misled thereby to the defendant's prejudice." Cf. Crawl v. Dancer, 180 Mich. 607, 147 N.W. 495 (1914).

1. "(W)e would prove as part of our case here that following this unfortunate accident that Mr. Bryan pleaded guilty in this court to a charge under Idaho Code 18–4006, to involuntary manslaughter and that a part of this charge is the driving (sic) the vehicle without circumspection and with gross negligence."

2. S.L.1953, ch. 273, regulating traffic on the highways and defining certain crimes in the use and operation of vehicles is codified as I.C. §§ 49–501 to 49–506 and 49–1001 to 49–1126, incl., see com-

pilers notes I.C. § 49–1104. I.C. § 49–1119 as so codified reads, "No evidence of the conviction of any person for any violation of this act shall be admissible in any court in any civil action." A plea of guilty, not to an offense specified in the motor vehicle act, but to the offense of involuntary manslaughter under I.C. § 18–4006, would not fall under the ban of I.C. § 49–1119, and would be admissible in a subsequent civil action arising out of the same event. To that extent the holding of Koch v. Elkins, supra, is still valid.

A general discussion of the scope and function of the opening statement of counsel is set forth in Miller v. Braun, 196 Kan. 313, 411 P.2d 621 (1966):

"The opening statements of counsel are generally no more than outlines of anticipated proof and are not intended as a complete recital of the facts to be produced on contested issues. Their purpose is to inform the jury in a general way of the nature of the action and defense; to advise it of the facts relied upon by the party to make up his cause of action or defense, and to define the nature of the issues to be tried and the facts intended to be proved, so as to better enable it to understand the case. [citations omitted]

"Generally speaking, counsel may outline in his opening statement what he expects to prove unless it is manifest that such proof would be incompetent, or the statement is made for the purpose of creating prejudice. Counsel should be allowed considerable latitude in his opening statement and its general nature and character rests largely with the discretion of the district court, which must necessarily rely on the good faith of counsel properly to confine his remarks within the bounds of propriety and good faith. Since whatever counsel states in his opening statement as to what he expects to prove is subject to the further action of the court in permitting him to introduce testimony, it is not necessarily misconduct for him to claim something he does not later prove. (88 C.J.S. Trial § 161, p. 314.) The rule is stated in 53 Am.Jur., Trial § 456, p. 358, as follows:

" 'It is generally held that statements by counsel that certain evidence will be introduced are not improper if made in good faith and with reasonable ground to believe that the evidence is admissible, even though the intended proof referred to is afterward excluded. However, *in the absence of good faith, or where* prejudice is clearly produced, whether as the result of accident, inadvertence, or misconception, the rule is to the contrary. * * *' "

■ In the case at bar, evidence of appellant's guilty plea, had it been offered in the trial court, would have been admissible. The plea was relevant, since it concerned the same legal question at issue in the civil action; nor is there anything in the record indicating that mention by respondents' counsel of appellant's guilty plea was not in good faith. The trial court did not err in overruling appellant's motion for mistrial, since at the time the motion was made, the court could not know what evidence would later be adduced. Moreover, no apparent prejudice to appellant resulted from such ruling, inasmuch as the trial court later gave curative instructions to the jury regarding the criminal charges, and the evidence amply supports the finding of gross negligence without reference to the criminal proceedings.

In State v. Urie, 92 Idaho 71, 437 P.2d 24 (1968), this Court considered the question whether an instruction could cure the erroneous admission in evidence of a showing that the defendant, at the time of trial, was confined in the penitentiary as the *result of a previous conviction. That error* was held to be rectified by a proper instruction.[3] The remarks of counsel regarding prior criminal proceedings cannot be considered to be any more prejudicial than

---

3. State v. Urie holds: "Appellant further contends that admission of State's Exhibit F was error in that it was not a proper matter for rebuttal and that it contained information highly prejudicial to his case—namely, that he was presently being confined in the state penitentiary as a result of a previous conviction.

"There is no merit to either contention. State's Exhibit F was introduced solely to explain what had transpired at the preliminary hearing in probate court between the time that the criminal complaint against Fraley and Urie was filed (Appellant's Exhibit 4) and the dismissal of charges as to Fraley (Appellant's Exhibit 5) because appel-

the introduction in evidence of prior criminal proceedings.

In the case at bar, the trial court gave two instructions admonishing the jury to disregard the mentioned but unproved guilty plea.[4] These instructions are clear and concise. If there is sufficient evidence in the record which will support the finding of the jury, we must presume that the jurors heeded those instructions.

There is indeed ample evidence in the record, apart from appellant's guilty plea to the charge of involuntary manslaughter, to support the finding of appellant's gross negligence.

First, appellant's testimony shows that both he and Mrs. Wamsley had been drinking prior to the accident. Appellant also admitted that prior to the accident he was very tired; that Mrs. Wamsley had told him he appeared tired and had inquired if she might drive appellant's automobile, and that he refused to let her drive. Moreover, an officer who investigated the accident testified that in his opinion appellant was intoxicated.

Second, Udell Anderson, driver of the truck, testified that appellant's vehicle, after being operated in an erratic manner, suddenly swerved into his, Anderson's, lane of traffic and crashed headlong into his truck. Appellant testified that he remembered none of the details of the accident, but that he might have fallen asleep or blacked out. Mrs. Wamsley had already told him, by his own admission, that he looked tired, and several times they pulled off the highway into turnouts for periods of rest. As for the blackouts, appellant testified that he had at times suffered the same (and one or two while driving) subsequent to a 1965 industrial accident.

Any of these three sets of facts—intoxication, falling asleep after being warned, or driving with a known propensity to black out—could constitute evidence from which a jury would be justified in finding gross negligence. Given these facts, respondents' mention to the jury (in the opening statement) of appellant's guilty plea in the prior criminal proceeding did not operate to the prejudice of appellant; and any prejudice which might have resulted therefrom was adequately cured by the trial court's instructions to the jury to disregard such incident.

Appellant next assigns as error the refusal of the trial court to instruct the jury to the effect that Mrs. Wamsley was guilty of contributory negligence in going to sleep and not exercising reasonable care and caution for her own safety.[5]

lant refused to testify therein. Moreover, any prejudicial matter contained in Exhibit F was cured by the trial court's explicit admonition to the jury to totally disregard any information concerning appellant's prior conviction in connection with the offense for which he was presently being tried. State v. Ramsbottom, 89 Idaho 1, 402 P.2d 384 (1965); State v. McConville, 82 Idaho 47, 349 P.2d 114 (1960); State v. Polson, 81 Idaho 147, 339 P.2d 510 (1959); State v. Autheman, 47 Idaho 328, 274 P. 805, 62 A.L.R. 195 (1929); and State v. Knutson, 47 Idaho 281, 274 P. 108 (1929). These authorities definitely establish the rule that in Idaho an error in admission of evidence may be cured by a proper instruction, and it must be presumed that the jury obeyed the trial court's instruction to disregard entirely the objectionable testimony."

4. Instruction No. 2. (Excerpt) "Arguments, statements, and remarks of coun-

sel are intended to help you in understanding the evidence and applying the law, but are not evidence. If any argument, statement, or remark has no basis in evidence, then you should disregard that argument, statement, or remark."

Instruction No. 28. "You are instructed that during this trial reference has been made on occasion to the fact that Mr. Bryan was charged with a crime as the result of the automobile accident which happened on January 15, 1966. The Court instructs you that no evidence has been introduced on this fact and that, therefore, you are not to consider whether or not Mr. Bryan was charged with any crime as the result of this accident in your deliberations."

5. Appellant's requested instruction:
"I instruct you that even though Marian Wamsley, as a passenger in the automobile, was not under the same or similar duty or obligation of care or

■ The trial court gave several instructions dealing with the defense of contributory negligence, but declined to give the requested instruction based specifically on the "sleep theory." There was no direct evidence that Mrs. Wamsley was asleep at the time of the accident. When specifically asked whether she was asleep, appellant testified, "I don't know." In order to show that Mrs. Wamsley was guilty of contributory negligence under that theory, appellant would have had to show by a preponderance of the evidence that she was asleep. He did not do so; his testimony in the premises in effect was that it was as likely that Mrs. Wamsley was not asleep as that she was asleep. Under the "sleep" theory, he failed to carry his burden of proof. Dent v. Hardware Mutual Casualty Co., 86 Idaho 427, 388 P.2d 89 (1964); Splinter v. City of Nampa, 74 Idaho 1, 256 P.2d 215 (1953). Hence the court did not err in refusing to instruct on that theory of contributory negligence.

■ Appellant also assigns error of the trial court in giving jury instruction No. 11, defining ordinary negligence in a case where recovery could be had only for gross negligence. Appellant contends that such an instruction would have the effect of unduly confusing the jury and lead to the application of the standard of ordinary negligence, where a showing of gross negligence is necessary to sustain a finding of liability. However, the instructions taken as a whole amply show that the standard to be applied is that of gross negligence. In fact, the complained-of instruction No. 11, begins as follows: "Plaintiff's [respondent's] case is based on his claim that there was gross negligence on the part of the defendant [appellant] which directly and proximately caused his [respondent's] damage." Instruction No. 5 commences: "The plaintiffs have the burden of proving the following propositions: FIRST: That the defendant was grossly negligent and that his gross negligence caused the accident in question." Instruction No. 6 sets forth I.C. § 49–1401, the automobile guest statute, requiring proof of gross negligence in order that liability attain in a case such as the one at bar. Finally, the court gave a specific instruction on "gross negligence." [6]

All instructions to a jury must be taken as a whole. In the absence of a showing to the contrary, we must assume that the jury applied the law as so given to the facts. Although the trial court deemed it necessary to instruct the jury on ordinary negligence as an aid to understanding the concept of gross negligence, Hayslip v. George, 92 Idaho 349, 442 P.2d 759 (1968), nevertheless, the instructions made it quite clear that recovery must be predicated on a showing of gross negligence; hence the giving of an instruction defining ordinary negligence was not error.

Appellant complains that the verdict of $44,500. is excessive inasmuch as Mrs.

watchfulness that the driver was, nevertheless, she was charged with exercising reasonable care and caution for her own safety, and this required her not to rely blindly upon the exercise of care and caution by the driver, but to take heed of all those facts and circumstances which may have been plainly visible to her, and as much a warning to her as to the driver, and particularly with reference to the acts of the driver.

"Therefore, if you find circumstances existed which would herald danger to a reasonably prudent person, and you further find that Marian Wamsley went to sleep while a passenger in the car, you must consider whether a reasonably prudent person would have gone to sleep under the facts in this case.

"Should you find that Marion Wamsley was contributorily negligent in going to sleep and such negligence was a proximate cause of her death, then Gerald Mattson may not recover in this case."

6. Instruction No. 18: You are instructed that gross negligence means that there must be more than ordinary negligence, for the two are distinguishable, the distinction being one of degree. Gross negligence means just what it indicates, gross or great negligence; that is, negligence in a very high degree.

Wamsley's only support was the $240. per month child support payments.

At the time of her death, Mrs. Wamsley had four minor children, ages 14, 12, 9 and 2. They were under her exclusive care, custody and control. In view of their ages, the amount of $11,125. per child was not excessive. Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651 (1950).

Finally, appellant contends that the trial court erred in denying appellant's motion for a new trial. There is no merit in his contention. The granting or refusal of such a motion rests in the sound discretion of the trial court, not to be disturbed except in cases of manifest error. Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967); Cassia Creek Reservoir Co. v. Harper, 91 Idaho 488, 426 P.2d 209 (1967).

Judgment affirmed. Costs to respondents.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.