■ SCOTT L. ALEXANDER, Appellant-Respondent, v FRANK D. ELDRED et al., Respondents-Appellants. — Cross appeals from an order of the Supreme Court, entered September 15, 1982 in Tompkins County, which set aside a verdict in favor of plaintiff rendered at Trial Term (Swartwood, J.), and granted a new trial solely on the issue of damages unless plaintiff stipulated to accept a reduced damage award. ¶ On July 20, 1978, at approximately 10:00 P.M., plaintiff was injured when the motorcycle he was operating southerly on Stewart Avenue in the City of Ithaca collided with a cab owned by defendant Terminal Taxi, Inc., and operated by defendant Frank D. Eldred. The taxi was proceeding easterly upgrade on Edgecliff Place, a dead-end private street, which terminates at Stewart Avenue and services two private homes, an apartment building and a fraternity house. Stewart Avenue is a winding thoroughfare at the intersection of Edgecliff Place and Thurston Avenue, a side street leading west to Stewart Avenue almost directly across from Edgecliff Place. As a result, there is a limited sight distance at any part of the intersection, but particularly at Edgecliff Place because of its rather severe upgrade. This action by plaintiff is against Terminal Taxi, Inc., its driver, and the City of Ithaca, and defendants have cross-claimed against each other. A trial before a jury resulted in a verdict for plaintiff in the amount of $85,000, finding plaintiff free from contributory fault, and apportioning liability of the city at 30% and the taxicab company and its driver at 70%. Posttrial motions by defendants were denied, except the motion addressed to the excessiveness of the verdict. In its decision, the trial court directed a new trial, limited to the issue of damages, unless plaintiff accepted a verdict reduced to $55,000. From all determinations adverse to them, all parties have appealed. ¶ Our only disagreement with the trial court is with its conclusion that the verdict rendered by the jury was excessive. Plaintiff was 27 years old at the time of the accident and sustained several severe fractures of his metatarsal bones and deep lacerations of his right foot, requiring open reduction and pinning. He was hospitalized for 12 days. Upon being discharged, plaintiff wore a leg cast which necessitated the use of a cane and crutches until January, 1979. Intermittently, he was treated medically until July, 1980. He has permanent shortening of his foot of three eighths of an inch, and thickening and stiffness of the foot, with internal rotation of his big toe and some clawing of other toes, which prevents his participation in volleyball, tennis and skiing, as he did before the accident. His medical expenses were $3,184.43 and he claims delay in seeking employment as an architect. Considering the nature and extent of plaintiff's injuries, their permanency and pain, a verdict of $85,000 cannot be said to be excessive (see *Riddle v Memorial Hosp.,* 43 AD2d 750, 751). ¶ As to the apportionment of liability among defendants, it is our view that the verdict is amply supported by the evidence. The jury could find that defendant Eldred operated his taxi out onto the main highway from a side street without stopping and maintaining a proper lookout. Additionally, it could consider that Eldred pleaded guilty to a violation of section 1140 of the Vehicle and Traffic Law, i.e., a failure to yield the right of way, which is admissible against him on the issue of his negligence (*Ando v Woodberry,* 8 NY2d 165). ¶ As to defendant

City of Ithaca, this record demonstrates that its failure to post a stop sign on Edgecliff Place constituted negligence which was a proximate cause of the accident in question. Plaintiff's expert, eminently qualified, testified without contradiction that a stop sign should have been present, and that maintenance of the intersection at the accident scene was not in accordance with good, sound and acceptable engineering practice. Of interest is the fact that immediately south of the scene of the accident were signs on each side of Stewart Avenue for vehicles proceeding northerly, indicating "dangerous intersection", and that the city engineer testified that such signs were necessary in his opinion. Accordingly, the absence of similar signs for vehicles proceeding southerly is of major significance on the question of the city's negligence. Furthermore, at the intersection of Stewart Avenue and Thurston Avenue, essentially across from the terminus of Edgecliff Place, the city maintained a stop sign on Thurston Avenue for vehicles proceeding west on Thurston Avenue entering Stewart Avenue. The city attempted to explain the absence of a similar sign on Edgecliff Place due to the fact that it was considered a private road by the city. However, this reasoning is flawed because such a sign is specifically authorized by statute to be erected on a private road when necessary (Vehicle and Traffic Law, § 1640, subd [a], par 1). Moreover, there is a statutory mandate that the city establish and maintain such a sign, as may be necessary, to conform to the requirements of State regulations establishing uniform traffic control devices (Vehicle and Traffic Law, § 1682; 17 NYCRR 232.1). At the very least, these requirements raise issues of fact as to the negligence of defendant city, and whether such negligence was the proximate cause of plaintiff's injuries. The determination of these factual issues is exclusively within the province of the jury (*Woodcock v County of Niagara,* 52 AD2d 1087; *Murphy v De Revere,* 279 App Div 929, affd 304 NY 922). ¶ Defendant city further contends that, in these circumstances, section 7.10 of the supplement to the Charter of the City of Ithaca (Local Laws, 1974, No. 1 of City of Ithaca) requires written advance notice of any defective condition before the city can be held liable therefor. This contention must be rejected for such provisions apply only to notice of physical defects in streets or sidewalks or other obstructions, and not for failing to establish or maintain signs (*Doremus v Incorporated Vil. of Lynbrook,* 18 NY2d 362; *Tully v Town of North Hempstead,* 93 AD2d 834; cf. *Johnstown Leather Corp. v City of Gloversville,* 56 AD2d 345). Finally, there is sufficient proof in the record to permit the jury to conclude that the city had not made an adequate or reasoned study of the need or lack thereof for signs along Stewart Avenue or Edgecliff Place and that, in the face of expert proof of the need for appropriate regulatory signs, the city could be cast in damages since it had forfeited any limited governmental immunity it might enjoy (*Weiss v Fote,* 7 NY2d 579, 586; *Atkinson v County of Oneida,* 77 AD2d 257, 260-261). ¶ Order modified, on the law and the facts, by reversing so much thereof as directed a new trial on the issue of damages only unless plaintiff stipulated to a reduced verdict, and, as so modified, affirmed, without costs. Kane, Weiss and Levine, JJ., concur; Mahoney, P. J., and Casey, J., concur in part and dissent in part in separate memoranda.

Mahoney, P. J. (concurring in part and dissenting in part). While I agree with the majority that the verdict in terms of damages was not excessive, and, further, concur that defendant City of Ithaca had a duty to erect and maintain such traffic control signs as were necessary to protect the driving public (Vehicle and Traffic Law, § 1640, subd [a], par 1; see, also, Uniform Traffic Manual, 17 NYCRR 207.4 [a]), I cannot agree that the city's failure to erect or post a stop sign at Edgecliff Place proximately contributed to the accident. It is clear from the evidence that defendant cab driver did stop at the intersection. Further, he pleaded guilty to a violation of section 1140 of the Vehicle and

Traffic Law. In my view, it was improper for the trial court to have submitted the issue of defendant city's negligence to the jury. Accordingly, I would modify the verdict by setting aside so much thereof as imposed liability against defendant city.

Casey, J. (concurring in part and dissenting in part). While in agreement with the majority insofar as the amount of the verdict is concerned, I cannot agree with the conclusion that a reasonable view of the evidence permits the imposition of liability for negligence on the part of defendant City of Ithaca. The majority relies upon the opinion testimony of plaintiff's expert that a stop sign should have been installed at the intersection and evidence that other signs had been installed elsewhere by the city. As a general rule, the decision as to whether to install a traffic control device is a discretionary governmental function not resulting in liability on the city's part (*Cimino v City of New York,* 54 AD2d 843, 844, affd 43 NY2d 966), involving, as it does, the city's judgment as how best to allocate its limited resources for the benefit of the public. "In the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public" (*Weiss v Fote,* 7 NY2d 579, 588). Such evidence is lacking here. ¶ In any event, even if it could be said that in failing to erect a stop sign or warning sign the city breached a duty owed to plaintiff, there is no evidence from which the jury could reasonably conclude that such a breach was a proximate cause of the accident. Both drivers were familiar with the intersection of Stewart Avenue and Edgecliff Place, plaintiff having regularly traveled Stewart Avenue and defendant cab driver having delivered several fares to the fraternity house located on Edgecliff Place. Plaintiff testified that he slowed to 15 or 20 miles per hour as he approached the intersection, but did not see the taxi cab until just before impact. Defendant cab driver testified that he stopped at the intersection momentarily, looked both ways and proceeded into the intersection, without observing plaintiff's motorcycle until the moment of impact. Plaintiff initially expressed the opinion that the cab never stopped before entering the intersection, but thereafter conceded that he had no actual knowledge as to whether the cab stopped momentarily, as defendant cab driver testified. There were no other witnesses to the accident. ¶ Given this undisputed evidence, the only conclusion reasonably to be drawn therefrom is that the accident was attributable solely to the inattention of the drivers (*Tomassi v Town of Union,* 46 NY2d 91, 97-98), and the jury having found plaintiff free of contributory fault, the sole proximate cause of the accident was defendant cab driver's failure to observe plaintiff's motorcycle and failure to yield the right of way.[*] Since failure to observe the rules of the road was the cause of the accident, the city's installation of the signs recommended by plaintiff's expert would have served no useful purpose (*Tomassi v Town of Union, supra*). Indeed, only pure speculation could lead to a conclusion that the existence of such signs would have caused either driver, particularly defendant cab driver, to act so differently as to avoid the accident. Accordingly, in addition to modifying Trial Term's order as to the amount of plaintiff's damages, I would set aside so much of the verdict as imposes liability against defendant city.

---

[*] Inasmuch as the evidence conclusively establishes that the cause of the accident was defendant cab driver's failure to observe plaintiff's motorcycle and failure to yield the right of way, whether he actually stopped before proceeding into the intersection is irrelevant.