903 P.2d 110

**Michael L. BEALE and Christine K. Beale, husband and wife, and Christine K. Beale, as parent and Guardian Ad Litem for Joshua C. Beale, a minor, Plaintiffs–Appellants,**

v.

**Michael SPECK and Gloria S. Speck, husband and wife, and Gregory L. Speck, Defendants–Respondents.**

No. 20873.

Court of Appeals of Idaho.

Aug. 11, 1995.

Petition for Review Denied Oct. 17, 1995.

Danny J. Radakovich, Lewiston, argued, for appellants.

Knowlton, Miles, Merica & Brudie, P.A., Lewiston, for respondents. Kent J. Merica argued.

WALTERS, Chief Judge.

This is an appeal from a judgment entered on a jury's award of damages to Christine, Joshua and Michael Beale in a personal injury case resulting from an automobile accident. We hold that the trial court erred in excluding evidence of an admission by a party-opponent but that the error was harmless.

We affirm all other determinations made by the trial court, except for the court's calculation of credit due against the judgment for payments made by the defendants' insurer. On the question of credit, we remand the case for a recalculation of the judgment.

## FACTS AND PROCEDURAL BACKGROUND

The accident in this case occurred on September 21, 1989, when a vehicle driven by respondent Gregory Speck (Gregory), then a teenager, collided into the rear of a vehicle driven by appellant Christine Beale (Christine). Christine was stopped for on-coming traffic while attempting to make a left turn into the parking lot of a restaurant. Christine's seven year-old son, Joshua Beale (Joshua), was a passenger in Christine's vehicle.

The Beales sued Gregory Speck and his parents for damages caused by Gregory's negligence. Christine sought recovery for medical expenses, emotional trauma and lost income; Joshua sought damages for head injuries and emotional trauma; and Christine's husband, Michael Beale (Michael), sought damages for loss of consortium. The jury returned a verdict in the Beales' favor. In apportioning liability, the jury found Gregory ninety-five percent negligent and Christine five percent negligent. The jury awarded damages in the amount of $11,218 to Christine, $625.84 to Joshua, and $500 to Michael. Judgment was entered in favor of the Beales for the amounts of the verdicts reduced by five percent representing the jury's assessment of negligence on the part of Christine. Following entry of judgment, the Beales moved for a new trial or judgment notwithstanding the verdict. The motions were based on inadequate damages, juror misconduct and insufficient evidence for the jury's finding of negligence on Christine's part. The district court denied the Beales' motions.

On appeal, the Beales argue that the district court erred in granting the Specks' motion in limine to exclude evidence of Gregory's plea of guilty to the charge of following too closely. They further argue that the district court erred in denying the Beales' motions for a new trial or judgment notwithstanding the verdict. Finally, the Beales assert that the district court erred in awarding expert witness fees to the Specks and in computing the credit the Specks were to receive for payments made to the Beales prior to trial.

## I. ADMISSIBILITY OF GREGORY SPECK'S GUILTY PLEA.

The record reflects that on November 2, 1989, Gregory appeared in court and entered a "plea of admission"[1] to the charge of following too closely. He was ordered to pay $38 in fines and costs. The Beales argue that the district court erred in granting the Specks' motion in limine to exclude evidence of Gregory's guilty plea. Determination of this issue requires that we reconcile two Idaho Supreme Court decisions, *Koch v. Elkins*, 71 Idaho 50, 225 P.2d 457 (1950), and *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987).

■ In *Koch*, our Supreme Court stated, "A plea of guilty to a criminal charge, which alleges facts that are in issue in a civil action, is admissible against the party entering the plea, as an admission against interest." 71 Idaho at 54, 225 P.2d at 460; *see also Mattson v. Bryan*, 92 Idaho 587, 448 P.2d 201 (1968).[2] In *Anderson*, the Court addressed

---

1. The court docket shows that pleas of admission are entered for infractions whereas pleas of guilty are entered for misdemeanors. For purposes of this Opinion, however, the plea of admission in this case will be referred to as a plea of guilty.

2. We note that both *Koch* and *Mattson* were decided prior to Idaho's adoption in 1985 of the Rules of Evidence. A question that neither party raises is whether the Rules have any impact on *Koch*'s holding that a guilty plea is admissible as

an "admission against interest." Under the Rules, there is an "admission by a party-opponent," which is not hearsay, Rule 801, and a "statement against interest," which is an exception to the hearsay rule and requires the unavailability of the declarant. Rule 804(b)(3). It is unclear whether the "admission against interest" language in *Koch* and *Mattson* contemplates an "admission by a party-opponent" as defined in Rule 801, or a "statement against interest," as defined in Rule 804(b)(3). For purposes of clarification and consistency, we will not employ the

whether a prior criminal conviction can serve as a basis for collateral estoppel in a subsequent civil action. 112 Idaho at 182, 731 P.2d at 177. The Court recited its holding in *Mattson* (and *Koch*), but distinguished the issue of collateral estoppel from the issue of whether a guilty plea is admissible in a civil case as an admission against interest. *Id.* The Court then stated that "[d]efendants in actions· involving criminal misdemeanors or traffic infractions may lack incentive to vigorously defend." *Id.* at 184, 731 P.2d at 179. Therefore, the Court held, "in most circumstances a conviction for a relatively minor matter such as a lesser misdemeanor, traffic infraction, or matter of like import, should not act as collateral estoppel in a subsequent civil action." *Id.*

Emphasizing the Court's reasoning in *Anderson* that defendants lack incentive to vigorously defend in cases involving traffic infractions, the district court in this case did not allow the Beales to introduce evidence of Gregory's guilty plea to the charge of following too closely. The Beales argue that *Anderson* is inapplicable as it addressed whether a *conviction* for a minor offense can act as *collateral estoppel* in a subsequent civil action whereas the instant case, like *Koch* and *Mattson*, addresses the *admissibility* of a *guilty plea* in a subsequent civil action. The Beales contend that *Koch* and *Mattson* are controlling and are consistent with, and unaffected by, *Anderson*.

The Beales' argument is bolstered by the following language from *Anderson*: "The question of whether a conviction can act as *collateral estoppel* in a subsequent civil action is distinct from and unaffected by the question of whether a guilty plea or conviction is admissible." *Id.* at 182, 731 P.2d at 177 (emphasis original). However, this language is not conclusive of the issue raised in this case. In light of *Anderson*'s recognition

that defendants charged with minor infractions lack incentive to vigorously defend, we also deem it necessary to address the impact, if any, of *Anderson*'s reasoning on *Koch*'s holding that guilty pleas are admissible in subsequent civil actions. In other words, should the distinction made in *Anderson* between convictions for minor offenses, particularly for traffic offenses, and convictions for more serious offenses be applied to preclude the admission of a guilty plea to a minor traffic offense in a subsequent civil action? [3]

Courts addressing the issue of admissibility of guilty pleas to minor traffic offenses in subsequent civil litigation have taken various approaches.[4] In many jurisdictions, a plea of guilty to a traffic offense is admissible in a subsequent civil proceeding arising out of the same occurrence as an "admission against interest" or as an admission by a party-opponent. *See, e.g., Durham v. Farabee,* 481 So.2d 885 (Ala.1985) (failure to yield right-of-way); *Kelch v. Courson,* 103 Ariz. 576, 447 P.2d 550, 553 (1968) (improper left turn); *Ray v. Jackson,* 219 Cal.App.2d 445, 33 Cal.Rptr. 339, 343 (1963) (driving without due caution); *Jacobs v. Goodspeed,* 180 Conn. 415, 429 A.2d 915, 917 (1980) (following too closely); *Boyd v. Hammond,* 55 Del. 336, 187 A.2d 413, 416 (1963) (going through stop sign); *Hunter v. Hardnett,* 199 Ga.App. 443, 405 S.E.2d 286, 287 (1991) (failure to yield right-of-way); *Wright v. Stokes,* 167 Ill.App.3d 887, 118 Ill.Dec. 853, 856, 522 N.E.2d 308, 311 (1988) (plea of guilty to offense of crossing the center line admissible even where underlying charge has been finally dismissed after defendant has received supervision); *Dept. of Public Safety v. Palmisano,* 444 S.W.2d 128 (Ky.1969) (traffic citation for speeding, signed by defendant admissible in action to rescind suspension of operator's license); *Arceneaux v. Domingue,* 365 So.2d 1330, 1336 (La.1978)[5] (negligent

---

phrase, "admission against interest," found in *Koch* and *Mattson* and instead hold that a plea of guilty constitutes an "admission by a party-opponent," which is not hearsay and does not require the unavailability of the declarant.

3. In *Koch* and *Mattson,* the crimes to which the defendants pled guilty were reckless driving and involuntary manslaughter, respectively.

4. *See generally,* Jay M. Zitter, Annotation, *Admissibility of Traffic Conviction in Later State Civil Trial,* 73 A.L.R.4th 691 (1989).

5. *But see Ruthardt v. Tennant,* 252 La. 1041, 215 So.2d 805, 808 (1968) (where driver pled not guilty to, but was convicted of, reckless driving, evidence of conviction inadmissible because "trials and convictions in traffic courts and possibly in misdemeanor cases generally are not always

operation of automobile); *Seals v. St. Regis Paper Co.*, 236 So.2d 388, 392 (Miss.1970) (unlawfully passing school bus); *Schaefer v. McCreary*, 216 Neb. 739, 345 N.W.2d 821, 825 (1984) (reckless driving); *Public Service Co. v. Chancey*, 94 N.H. 259, 51 A.2d 845, 846 (1947) ("Unless the record showed a plea of guilty [to operating motor vehicle while intoxicated], under our decisions it would not have been admissible to establish the truth of the facts alleged in the complaint."); *Eaton v. Eaton*, 119 N.J. 628, 575 A.2d 858, 866 (1990) (careless driving); *Alexander v. Eldred*, 100 A.D.2d 666, 473 N.Y.S.2d 864, 866 (1984) (failure to yield); *Teachey v. Woolard*, 16 N.C.App. 249, 191 S.E.2d 903, 906 (1972) (unspecified "traffic offense"); *Dartt v. Berghorst*, 484 N.W.2d 891, 894 n. 3 (S.D.1992) (failure to drive within lane required); *Bagley v. Weaver*, 211 Va. 779, 180 S.E.2d 686, 688 (1971) (plea of guilty to reckless driving admissible where defendant appeared in person and voluntarily submitted plea); *White v. Lock*, 175 W.Va. 227, 332 S.E.2d 240, 243 (1985) (driving left of center); *Gaspord v. Hecht*, 13 Wis.2d 83, 108 N.W.2d 137, 139 (1961) (failure to yield right-of-way); *Haley v. Dreesen*, 532 P.2d 399, 402–03 (Wyo.1975) (driving too fast for conditions). However, the majority of these cases further hold that evidence of the prior guilty plea, while admissible, is not conclusive and may be explained by the party against whom it is offered.[6]

In some jurisdictions, the admissibility of guilty pleas to traffic infractions is governed by statute. *See, e.g., Carter v. Rukab*, 437 So.2d 761, 762–63 (Fla.Dist.Ct.App.1983) (under statute decriminalizing certain minor traffic violations, admission of guilt to traffic infraction and waiver of right to hearing by payment of civil penalty or forfeiture of bond cannot be used as evidence in any other proceeding); *Theriault v. Swan*, 558 A.2d 369, 370 (Me.1989) (evidence of defendant's admission to traffic infraction of imprudent speeding precluded by Maine statute; therefore, not admissible as admission by party-opponent);[7] *Glens Falls Group Ins. Corp. v. Hoium*, 294 Minn. 247, 200 N.W.2d 189, 192 n. 2 (1972) (state statute excludes pleas of guilty in traffic matters from being admitted into evidence in civil litigation); *Ryan v. Ohm*, 39 Or.App. 947, 593 P.2d 1296, 1298 (1979) (Under Oregon statutes, "a guilty plea to a traffic offense, which is a crime, is admissible as an admission against interest in a subsequent civil action arising out of the same accident or occurrence. When the offense is merely a traffic infraction, however, a guilty plea is inadmissible. . . .").

Other states require an affirmative showing that a traffic fine was paid because the defendant believed himself guilty; otherwise, evidence of payment of the fine is inadmissible. For example, in *Turner v. Silver*, 92 N.M. 313, 587 P.2d 966, 969 (Ct.App.1978), the court held that a traffic citation for obstructing traffic, which carried a $10 fine, was admissible because the defendant "understood that he was guilty of the charge." In so holding, the court stated:

trustworthy for they are often the result of expediency or compromise").

**6.** Other jurisdictions, while not explicitly addressing the admissibility of guilty pleas to traffic and other minor offenses, have held that evidence of guilty pleas to more serious crimes is admissible as an "admission against interest" or an admission of a party-opponent in a subsequent civil action. *See, e.g., State v. Poindexter*, 517 N.E.2d 88, 94–95 (Ind.Ct.App.1987) (official misconduct); *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 732 P.2d 741, 745 (1987) (plea of guilty to charge may be admitted into evidence in subsequent civil action as an admission of an act which was the basis of the act charged; however, jury's finding of guilt for voluntary manslaughter not an admission and therefore inadmissible); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842, 848 (1975) (assault); *Aetna Cas. & Sur. Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356, 1363 (1985) (arson and conspiracy); *LaMartina v. Hannah*, 675 S.W.2d 444, 446 (Mo.Ct.App.1984) (assault); *Sikora v. Sikora*, 160 Mont. 27, 499 P.2d 808, 812 (1972) (manslaughter); *Dahlen v. Landis*, 314 N.W.2d 63, 72 (N.D.1981) (misdemeanor assault); *Silveira v. Santos*, 490 A.2d 969, 971 (R.I.1985) (third degree sexual assault); *Grange Mut. Cas. Co. v. Walker*, 652 S.W.2d 908, 910 (Tenn.Ct.App.1983) (voluntary manslaughter); *Dixon v. Stewart*, 658 P.2d 591, 600 (Utah 1982) (negligent homicide); *Russ v. Good*, 92 Vt. 202, 102 A. 481, 482 (1917) (breach of the peace); *Safeco Ins. Co. of America v. McGrath*, 42 Wash.App. 58, 708 P.2d 657, 660 (1985) (second degree assault).

**7.** Apparently, prior to the enactment of this statute, pleas of guilty to traffic offenses were admissible in subsequent civil actions. *See MacDonald v. Hall*, 244 A.2d 809 (Me.1968).

Evidence that a party charged with a traffic offense merely paid a fine, is not an admission against interest in the civil case involving the offense, and is not admissible in evidence. However, where that person pays a fine because he thought he was guilty, evidence of the offense committed is admissible in evidence....

We hold the rule to be that a party who is charged with a traffic offense and pays a fine because he understood or thought he was guilty, is akin to a party who pleads guilty. It constitutes an admission against interest and is admissible in evidence. Admissions made by a party are the strongest kind of evidence. Such admissions are binding and conclusive upon him if uncontradicted and unexplained.

*Id.* (citations omitted). Additionally, in *Walker v. Forrester*, 764 P.2d 1337, 1338 (Okl.1988), the appellee received a traffic citation, which she paid by mail, for Failure to Devote Attention to Driving. The court held:

The record in this case contains no proof that appellee ever pleaded guilty to her traffic citation. To the contrary, in her deposition the appellee stated that she simply mailed the fine to the municipal court clerk. To be precise, the appellee's deposition testimony is descriptive of [a] plea of nolo contendere.

Our cases have made it abundantly clear that such evidence is only admissible in a subsequent civil proceeding when it is shown that the defendant voluntarily and knowingly entered a plea of guilty to the traffic citation.

*Id.* (footnote omitted).

Finally, there are courts which hold that guilty pleas to traffic citations are not admissible in subsequent civil proceedings. In *Wheelock v. Eyl*, 393 Mich. 74, 223 N.W.2d 276, 278 (1974), the Michigan Supreme Court held that "a criminal conviction after trial, or a plea, or payment of a fine is not admissible as substantive evidence of conduct at issue in a civil case arising out of the same occurrence." The court explained:

Civil suits, by and large, are contested claims among individuals. Criminal cases involve a charged offense against the whole

People of the State. While the same conduct often affronts society and gives rise to claim in an individual on account of it, the considerations and purposes of the separate procedures for redressing the respective wrongs are disparate and both procedures are diminished by ignoring the differences.

A litigant should not be burdened in adjudicating his civil rights according to how or whether he has satisfied the claim against him by society.

Likewise the speedy determinations of society's claims against individuals should not be influenced by a rule of civil procedure which puts a premium on the mode of response to society's charge.

*Id.* Similarly, in *Hannah v. Ike Topper Structural Steel Co.*, 120 Ohio App. 44, 201 N.E.2d 63 (1963), the court held that a traffic ticket issued to the defendant for failure to yield at a stop sign and the attached form which had been signed by the defendant and which authorized entry of a guilty plea and payment of a fine could not be used against the defendant in an automobile collision case. *Id.* at 44–46, 201 N.E.2d at 64. In so holding, the court stated:

There is considerable authority that a plea of guilty to an offense which involves conduct in issue may be admissible. If the statement here be considered as an admission of the fact of failure to yield for the stop sign, then the questions were proper, and the testimony of the clerk and the exhibit should have been accepted.

However, in our opinion, the statement here has not obtained the dignity of a confession of fact.... The record here indicates that the statement was made in the course of appellee's paying a fine under what has been called the "cafeteria" system for minor traffic offenses. This system permits a person charged with certain offense to have the option of paying an amount to the clerk at a pre-scheduled rate and without appearance in court (in most instances a check may be mailed). We think it must be recognized that the cost of defense compared to the amount charged and the inconvenience, as well as

indirect economic losses of court appearances, are practical motivations behind the act of a person ... in the system involved here....

Accordingly, in our view, the statement signed by [the defendant] does not, under these circumstances, constitute an admission of the fact that he did the act charged in the ticket, and the evidence was properly excluded.

*Id.* at 65 (citations omitted).

In *Loughner v. Schmelzer*, 421 Pa. 283, 218 A.2d 768, 769 (1966), the lower court admitted, over the plaintiffs' objection, evidence that one of the plaintiffs was convicted of the offense of failure to drive on the right half of the highway. The Pennsylvania Supreme Court held that "evidence of the conviction of a traffic violation or of small misdemeanors is not admissible in a civil suit for damages arising out of the same traffic violation or lesser misdemeanors." *Id.* Quoting from a prior case, *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624, 627 (1965), *cert. denied*, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965), the court explained:

"[W]e recognize a valid existing distinction in cases involving the record of conviction of relatively minor matters such as traffic violations, lesser misdemeanors, and matters of like import. Especially in traffic violations, expediency and convenience, rather than guilt, often control the defendant's 'trial technique.' "

*Id.* Although the courts in *Hurtt* and *Loughner* addressed guilty convictions rather than pleas, their reasoning has been extended to guilty pleas. *See Cusatis v. Reichert*, 267 Pa.Super. 247, 406 A.2d 787, 790 (1979).

In *Scott v. Robertson*, 583 P.2d 188, 190 (Alaska 1978), the appellant, the driver of a car involved in a rear-end collision, was convicted of operating a motor vehicle while under the influence of intoxicating liquor. In the negligence action resulting from the collision, the Alaska Supreme Court held that evidence of the conviction was admissible. Although this case addressed the admissibility of a conviction pursuant to a jury trial rather than a guilty plea, the court, in enunciating a test governing the admissibility of prior convictions, also addressed the admissibility of guilty pleas to minor traffic citations:

We first require that the prior conviction be for a serious offense in order that the accused have the motivation to defend himself fully. A driver who pleads guilty to a minor traffic violation may have decided merely that the costs of defending outweigh the burden of having such a conviction on his record. Such a conviction is not credible evidence of guilty conduct.

*Id.* at 190. *See also Monsma v. Williams*, 385 P.2d 107, 110 (Alaska 1963) ("[A] conviction on the plea of guilty [to criminal assault] is admissible against [the defendant] in a civil action growing out of the same offense[.]"); *Samuel v. Mouzon*, 282 S.C. 616, 320 S.E.2d 482, 484–85 (Ct.App.1984) (testimony of highway patrolman showing defendant charged with driving left of center and forfeited bond on that charge not admissible).[8]

Other courts considering the issue have held that pleas of guilty are admissible only if the plea is made in open court. For example, in *Dedman v. Porch*, 293 Ark. 571, 739 S.W.2d 685, 687 (1987), the court held that evidence that a motorist had been cited for failure to yield the right-of-way, and that he had subsequently paid the ticket rather than appear in court, was not admissible in a property damage action as a statement against interest. In reaching this conclusion, the court stated:

We are unable to find a case which holds that paying a traffic ticket entitles the opposing side to introduce evidence of such as an admission against interest.... We reaffirm our position that the only proper evidence relating to a traffic violation conviction is a party's plea of guilty in open court.

*Id.*[9] Similarly, in *Briggeman v. Albert*, 322 Md. 133, 586 A.2d 15, 16 (1991), the court held:

---

**8.** However, the court further stated, "a judgment on a plea of guilty may be received into evidence as an admission, subject to explanation or rebuttal." *Id.*

**9.** Important to note, however, is the court's reference to an Arkansas statute, which provides, " 'No record of the forfeiture of a bond or of the conviction of any person for any violation shall

Generally, when a guilty plea to a criminal charge is admitted in a subsequent civil action, it is under the auspices of an admission by a party-opponent. . . .

. . . The submission of payment personally or by mail in satisfaction of a traffic fine, however, is not the evidentiary equivalent of a guilty plea in open court. . . .

The payment of a traffic fine is neither a guilty plea nor an express acknowledgment of guilt; it is at most a consent to conviction, closely analogous to a plea of *nolo contendere*. . . . It is not a guilty plea and, therefore, not an express admission by a party-opponent.

*Id.*, 586 A.2d at 16 (citations omitted). Quoting from the *Harvard Law Review*, the court further reasoned:

"It is not clear, however, that the probative weight of such evidence [of a plea of guilty to a traffic infraction] is in fact sufficient to withstand the thrust of opposing notions of prejudice and policy. Traffic infractions . . . carry relatively light penalties for a person who pleads guilty, while the inconvenience of contesting the charge is often considerable and the fairness of traffic court adjudication, which may result in an increased penalty if the case is contested, is open to question. Thus it is common experience that people plead guilty to traffic charges for reasons of expediency even though they may believe themselves innocent."

*Id.*, 586 A.2d at 18, *quoting* Note, *Recent Cases*, 74 Harv.L.Rev. 1452 (1961). Similarly, in *Cox v. Bohman*, 683 S.W.2d 757, 758 (Tex.Ct.App.1984), the court held, "Unless a plea of guilty to a traffic offense was made in open court, according to law, evidence of such guilty plea is not admissible in a civil suit for damages arising out of negligence giving rise to the charge."[10]

After a thorough examination of the various policy considerations and the reasoning articulated in the above cases, we hold that evidence of a party's plea of guilty to a traffic infraction is admissible against that party in a subsequent civil proceeding arising from the same occurrence as an admission by a party-opponent. However, evidence of such a plea is not conclusive on the issue of negligence; the party against whom the evidence is offered is free to explain the circumstances under which the guilty plea was entered, and the jury, as the trier of fact, shall determine the weight to which that explanation is entitled.

The Specks argue that I.C. § 49–1414 supports the district court's decision not to allow evidence regarding Gregory's guilty plea. I.C. § 49–1414 provides, "The conviction of a person upon a charge of violating any provision of this title less than a felony shall not affect or impair the credibility of that person as a witness in any civil or criminal proceeding." However, this statute is inapposite. It addresses *convictions* entered upon criminal charges, not the *admission* of guilt by a defendant charged with an infraction violation.

Having determined that the district court erred in granting the Specks' motion to exclude evidence of the guilty plea, we must next decide whether the error was harmless in light of the jury's finding that Gregory was ninety-five percent negligent. This Court must disregard any error or defect in the proceeding "which does not affect the substantial rights of the parties." I.R.C.P. 61; *see also* I.R.E. 103(a).

The Beales assert that such error was prejudicial because without the evidence of Gregory's guilty plea, the Specks were able to argue that Christine was at fault for the collision, despite the fact that she was "making a lawful left turn." We are unpersuaded

be admissible as evidence in any court in any civil action.'" *Id.*

**10.** The *Cox* court noted, however, that statutory provisions govern this issue. One Texas statute provides that in cases involving moving traffic violations for which the maximum punishment is a fine, payment of the fine constitutes a finding of guilty, "'as though a plea of *nolo contendere*

has been entered by the defendant.'" *Id.*, *quoting* TEX.CODE CRIM.PROC.ANN. art. 27.14 (Vernon Supp.1984). Another Texas statute provides that a plea of *nolo contendere* to a traffic violation cannot be admitted into evidence in a civil suit for damages arising out of the same incident. *Id.*, citing TEX.CODE CRIM.PROC. ANN. art. 27.02 (Vernon Supp.1984).

by this argument. Even assuming that the jury *had* been informed that Gregory pled guilty to the infraction of following too closely, the jury heard evidence suggesting that Christine was not free from fault. Denise Rowland, who was a passenger in Gregory's vehicle, testified that she had an unobstructed view of the back end of Christine's car and that Christine did not have her left turn signal on. Moreover, Christine's own testimony may have influenced the jury's determination that she was partly responsible for the accident. Although Christine testified that she activated the left turn signal prior to the accident, she further stated that following the accident, she noticed it was no longer on and that she therefore activated the signal so that "the officer will know that it was [on]."

In addition, the exclusion of Gregory's guilty plea did not preclude the Beales from arguing that Gregory was following too closely. Indeed, in closing argument, counsel for the Beales did in fact argue that Gregory acted in violation of I.C. § 49–638, the provision defining the offense of following too closely.[11] Moreover, the district court instructed the jury with respect to I.C. § 49–638, and informed the jury that, absent an emergency or the impossibility of compliance, "violation of a statute is negligence."

Finally, because the jury in fact found Gregory negligent, the issue to which the guilty plea would have been relevant was resolved in the Beales' favor. Evidence of Gregory's guilty plea would not have countered or refuted the evidence that Christine was also negligent.

Based on the foregoing, we hold that the exclusion of Gregory's plea of guilty to the offense of following too closely did not affect the Beales' substantial rights and was therefore harmless error.

## II. THE BEALES' MOTIONS FOR A NEW TRIAL OR JUDGMENT NOTWITHSTANDING THE VERDICT.

Following the jury's verdict, the Beales filed a motion for a new trial or, in the alternative, judgment notwithstanding the verdict, both of which the district court denied. Their request for judgment n.o.v. was made on the grounds of inadequate damages, and the request for a new trial was predicated on allegations of juror misconduct, inadequate damages, and insufficient evidence to support the jury's finding of negligence on Christine's part. We address the Beales' motions in turn.

### A. The motion for judgment notwithstanding the verdict.

 A motion for judgment n.o.v. under I.R.C.P. 50(b) admits the truth of all adverse evidence and every inference that may legitimately be drawn therefrom. *Litchfield v. Nelson*, 122 Idaho 416, 419, 835 P.2d 651, 654 (Ct.App.1992). In considering the motion, the trial court is not free to make its own findings of fact but must construe the evidence in a light most favorable to the nonmoving party. *Id.* The requisite standard is whether the evidence is of sufficient quantity and probative value that reasonable minds could reach the same conclusion as did the jury. *Id.* The question is decided by the trial court as a matter of law. *Id.* at

11. Counsel for the Beales argued as follows:
 Now, I also told you that we would talk about negligence per se. There are two statutes with which we are concerned regarding negligence per se. And one I would call the following too closely statute. And that the Court has instructed you that the statute provided, the driver of a vehicle shall not follow any other vehicle more closely than is reasonable and prudent having regard for the speed of the vehicle, the traffic upon and the condition of the highway. And that unless certain circumstances exist, the violation of that statute is negligence.
 ... Ladies and Gentlemen, if you were driving down the roadway and if as Mr. Speck and Denise said you were having visual problems with the sun, would you do something about it? Would it be a reasonable and prudent step to perhaps slow down if you couldn't see clearly or to at least do something about the problem[?]
 If you cannot see well, the implication of this statute is you slow down until you can see well. Or you do something about it. *So we would submit to you that Mr. Speck violated the statute against following too closely because when he finally saw her vehicle he was apparently too close to stop. That's a violation of that statute and therefore it is negligence per se.* (emphasis added).

419–20, 835 P.2d at 654–55. If there is substantial evidence to support the jury's verdict, the motion should be denied. *Id.* at 420, 835 P.2d at 655. This same standard is applied by the appellate court on review. *Id.* Accordingly, we exercise free review of the record, without deference to the views of the trial court, to determine whether the verdict can be supported under any reasonable view of the evidence. *Id.*

The jury awarded damages in the amount of $11,218 to Christine, $625.84 to Joshua and $500 to Michael. In their appellate brief, the Beales argue that the district court should have granted their motion for judgment n.o.v. and awarded the Beales the following amounts: $61,725.72 to Christine, $11,067.84 to Joshua and $11,520 to Michael. We analyze the evidence presented with respect to each of the Beales to determine whether the amounts awarded were supported by substantial evidence.

■ The Beales' complaint alleged that Christine sustained injuries to her neck, right arm, right leg, right hip, pelvis and back and that she suffered emotional trauma. The complaint further alleged that as a result of the accident, Christine was forced to close her day care business and suffered damages for lost earnings, past and future. The jury awarded Christine damages in amounts substantially less than those sought for these injuries. Substantial evidence supported the jury's determination that Christine's injuries were not as serious as she represented.

For example, Christine was examined by Dr. Peter Beall, an orthopaedic specialist, approximately two and one-half weeks after the accident. Christine was referred to Dr. Beall by Dr. William Bond, her treating physician. Dr. Beall found no symptoms associated with acceleration/deceleration injury of the neck. In a letter to Dr. Bond, which was submitted to the jury, Dr. Beall stated:

> PHYSICAL EXAMINATION: The exam today shows a patient to enter wearing a soft collar. In spite of this she shows a full range of motion of the neck to confrontation.... The patient shows no discomfort to palpation about the neck. The reflexes

in the upper and lower extremities are active and symmetrical. There is no spasm in the back, and there is again a normal range of motion to confrontation.

> . . . . .

> At this point we have a patient who has complaints of neck and back pain without any signs of radiculopathy.... The patient did ask me several questions, she asked me if she had a typical "whiplash." I think at this point I can say that most of the things associated with an acceleration/deceleration injury of the neck are not present in her symptom complex.

The letter contained no suggestion that Christine suffered any physical injuries as a result of the accident. Moreover, Dr. Beall specifically informed Dr. Bond that Christine had no signs of "radiculopathy" or "disease of the nerve roots." [12] However, according to Dr. Bond's testimony, Christine told Dr. Bond that Dr. Beall had diagnosed a pinched nerve and had informed her that she suffered from whiplash.

Dr. Bond further testified that he continued to see Christine through 1989 and 1990. He stated that to some degree, he felt Christine's symptoms were not substantiated by objective findings and that there was a psychological component to her symptoms. However, he further explained that this psychological component resulted from the accident.

There was also conflicting testimony by the two chiropractors, Dr. Thomas Skinner, an expert presented by the Beales, and Dr. Peter Zografos, the Specks' expert. Christine saw Dr. Skinner on September 24, 1989, but had also been treated by him in prior years for problems in the neck and back and for headaches. Dr. Skinner testified that Christine had, at the time of trial, "subluxations," which he described as swollen discs which result in nerve impingements. He testified that he discovered these conditions by use of a temposcope, which is a thermocouple device. He also stated that Christine had pinched spinal nerves in several places.

However, Dr. Zografos refuted Dr. Skinner's assessment and the validity of Dr. Skin-

**12.** DORLAND'S ILLUSTRATED MEDICAL DIC- TIONARY 1109 (26th ed. 1981).

ner's medical procedures. Dr. Zografos testified that he conducted an examination of Christine on May 7, 1993, and reviewed almost all of Christine's medical and chiropractic records. He directly disputed Dr. Skinner's findings of pinched nerves or disc injuries. He stated that the x-rays did not substantiate a finding of any injuries resulting from the accident; rather, they indicated that Christine had some degree of scoliosis, which is a congenital condition. Dr. Zografos also stated that thermocouple devices, including the temposcope on which Dr. Skinner relied, "scientifically has no validity." He also opined that there is no such thing as a swollen disc, one of the primary injuries noted by Dr. Skinner.

Dr. Zografos noted that the Christine's symptoms had changed significantly from what she reported to the emergency room staff and what she developed over the ensuing months. He testified that when she first went into the hospital, she complained of neck stiffness and lower back pain but did not report symptoms such as numbness and tingling, which she later claimed to have. He stated that these symptoms would be expected to be found within forty-eight to seventy-two hours following the injury. Dr. Zografos could not find anything objective to substantiate the symptoms of which Christine complained.

Dr. Skinner concluded that Christine had not improved very much in the three years following the accident and may have a permanent condition requiring future chiropractic treatment. He believed that Christine was incapable of gainful employment in her day care business because of her inability to lift, bend, or stoop and her inability to lift twenty to fifty pounds occasionally and ten to twenty-five pounds frequently.

Dr. Zografos again contradicted Dr. Skinner's position. He believed that Christine needed to be on an exercise program and that she was physically capable of carrying on employment. Regarding future chiropractic treatment, Dr. Zografos stated, "I feel that the way the case has been handled, the care is detrimental because it tends to re-enforce [sic] her dependency on treatment and her pain behavior."

Also contradicting Dr. Skinner's assessment was the testimony of Dr. Stephen Sears, an orthopedic surgeon who examined Christine on May 6, 1993, and reviewed the other doctors' medical reports and x-rays. Dr. Sears testified that Christine exaggerated her symptoms and that nothing significant was wrong with her. He further stated that there were no pinched nerves and no evidence of permanent physical impairment or disability. His opinion was that there was no need for future medical treatment and that such treatment was actually "contraindicated." He testified that there was no need for continued physical therapy and that Christine was "fit for employment without limitations except those imposed by her age and body size." Dr. Sears also believed that Christine was capable of lifting twenty to fifty pounds occasionally and ten to fifteen pounds frequently.

There was other conflicting evidence. Christine testified that after the accident she was extremely limited in her physical activities. She stated that she could no longer operate her day care business because it required stooping, bending and lifting, which she stated she was unable to do. She further testified that it was a year after the accident before she resumed any house cleaning and that during the six months following the accident, she could not do much except go to doctors and come home. She stated that she was required to regularly use a cervical collar for up to six months following the accident and that during those months, her pain was so intense that she flinched and grimaced regularly.

However, the Specks called Lori Hoffman, an employee of Christine's from October 1989 until March 1990. Hoffman saw Christine in the Beales' day care business and in their home three to four times a day, sometimes a few hours at a time. She testified that Christine left the house and drove every day, that she did not wear her neck collar very often, although she wore it on those days that she had a doctor's appointment. She testified that during her employment, Christine "didn't seem like she was in any pain at all." Hoffman also stated that during the first six months following the accident,

she saw Christine carry a laundry basket up and down the stairs, carry groceries up the stairs, dust and pick up a lamp, vacuum the floors, and put dishes in the dishwasher.

The deposition of Dr. Alexander MacKay, a neurological surgeon whom Christine visited in April 1990, was presented by the Beales. Dr. MacKay conducted a complete examination, including an MRI of her neck and spine. He testified that there was no evidence of muscle spasm of the neck muscles and that Christine had a full range of motion of the neck. He stated that the x-rays revealed a mild curvature of the spine, which is congenital, "degenerative changes" in the cervical area of the spine and some disc protrusion, to which he did not attach any significance or causation. Dr. MacKay testified that nothing about the x-rays led him to believe that the abnormalities were caused by the accident and that his examination, including the MRI, did not lead him to believe Christine had sustained permanent injuries as a result of the accident.

■ The credibility of witnesses and the weight to be given their testimony are matters exclusively within the province of the jury. *Goodwin v. Wulfenstein*, 107 Idaho 492, 495, 690 P.2d 947, 950 (Ct.App.1984). In the instant case, it would appear that the jury was influenced, to some degree, by the testimony of those witnesses who questioned the existence or severity of the injuries Christine claimed to have sustained as a result of the accident. We conclude, based on the foregoing, that substantial evidence supported the jury's award of $11,218 to Christine.

■ Regarding Michael's damages, we note that the claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse. *Runcorn v. Shearer Lumber Products, Inc.*, 107 Idaho 389, 394, 690 P.2d 324, 329 (1984). Therefore, the extent of Christine's injuries has a direct bearing on Michael's claim for loss of consortium. In light of the jury's award of $11,218 to Christine, we cannot say that damages in the amount of $500 to Michael were unreasonable.

■ With respect to Joshua, the complaint asserted that he suffered an injury to his head, and emotional trauma. During the trial, Christine and Joshua asserted that Joshua suffered from repeated headaches as a result of the accident. Joshua was first seen by Dr. Skinner on October 4, 1989. At the time of the trial, Dr. Skinner had seen Joshua approximately sixty times, with thirteen of those visits occurring between October 4, 1989 and November 3, 1989. Dr. Skinner determined that Joshua's headaches were the result of "a subluxation of his cervical spine[,] especially on the atlas" and subluxations at the first and seventh dorsals and at the sacrum. However, in making this determination, Dr. Skinner used the same instrument that Dr. Zografos testified had no scientific validity, and diagnosed a symptom, subluxation, or swollen discs, which Dr. Zografos testified did not exist.

In treating Joshua, Dr. Skinner conducted chiropractic adjustments on Joshua's atlas and other areas of his spine. However, the validity of Dr. Skinner's diagnosis and treatment of Joshua was undermined by another of the Beales' witnesses, Dr. John Rusche, a pediatrician who examined Joshua on November 3, 1989. Dr. Rusche testified that he was informed by Christine that Joshua had had headaches following the accident. After conducting a thorough examination of Joshua, Dr. Rusche could find no physical problems to account for the headaches. Dr. Rusche concluded that the headaches were not a result of any physical injury, but were "functional" in nature, meaning that they were a psychological response. Dr. Rusche recommended to Christine that Joshua not receive any further chiropractic care because of his belief that chiropractic treatment poses a risk for children, and instead recommended that Joshua receive counseling.

Lori Hoffman testified that she saw Joshua during the time that he was receiving treatment by Dr. Skinner for headaches. She stated that she saw him approximately five days a week when he came to the day care after school and that she never heard him complain of headaches. Moreover, Christine never told her that Joshua was in the automobile accident or that he was hav-

ing any symptoms attributable to the accident. Additionally, Christine testified that Joshua was never excused from school as a result of the accident. Upon review of the trial proceedings, we conclude that substantial and competent evidence supported the jury's award of $625.84 to Joshua. Based on the foregoing, we hold that the district court properly denied the Beales' motion for judgment notwithstanding the verdict.

### B. The motion for a new trial.

The Beales also argue that the district court erred in denying their motion for a new trial, made pursuant to I.R.C.P. 59(a). On appeal, an appellate court will not reverse a trial court's order granting or denying a motion for new trial unless the court has manifestly abused the wide discretion vested in it. *Jones v. Panhandle Distributors, Inc.,* 117 Idaho 750, 755, 792 P.2d 315, 320 (1990). While the appellate court must review the evidence, it is not in a position to "weigh" the evidence as the trial court does. *Id.*

The Beales submit that two instances of juror misconduct required a new trial. *See* I.R.C.P. 59(a)(2). First, they argue that one of the jurors, Catherine Yeats (Yeats), improperly failed to inform the court during voir dire that she knew the Beales from previous contacts. They assert that Yeats "did not truthfully respond in voir dire when asked if she knew the plaintiffs." However, this mischaracterizes the facts. According to the affidavit of Christine's mother, Joan Schoonmaker, while waiting to testify on the second day of trial, Schoonmaker observed Yeats "walk up to the bailiff and state [to] him that she had *just remembered* that she knew the Beales ..." (emphasis added). Therefore, there is no indication that Yeats was dishonest during voir dire. Moreover, the Specks counter that because the Beales knew about Yeats' acquaintance with them prior to the submission of the case to the jury and did not bring the issue to the district court's attention, the Beales are precluded from raising the issue on appeal. We agree.

When the complaining party or his counsel knows of alleged juror misconduct before the verdict is returned but keeps silent, any right to claim misconduct is waived. *Pacheco v. Safeco Ins. Co. of America,* 116 Idaho 794, 801, 780 P.2d 116, 123 (1989). In her affidavit, Christine stated that at some point "following voir dire but before the jury returned its verdict," she recalled that Yeats had formerly lived in the same neighborhood as Christine and had been turned down for employment at Christine's day care business. Pursuant to *Pacheco,* Christine's failure to inform the court, prior to the verdict, of her previous contact with Yeats constituted a waiver of the issue of alleged juror misconduct.

The Beales also contend that certain jurors did not truthfully answer questions during voir dire. This assertion is predicated upon a statement made in a "Jury Exit Questionnaire" which was administered by the district court. In response to an inquiry into whether the jurors observed anything which "disturbed" them about the other jurors or the operation of the jury system, one juror stated that during deliberation, several jurors expressed certain biases, including an antipathy toward chiropractors. The responding juror stated her belief that these biases "directly affected [the] verdict." The Beales contend that the jurors should have revealed their bias against chiropractors during voir dire, as they were informed that Dr. Skinner was a chiropractor who would testify, and were asked by the court if they could evaluate the evidence in a neutral and fair manner.

The district judge granted the Specks' motion to strike the responses to the questionnaire, ruling that use of the responses would violate I.R.E. 606(b), which states:

Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict ... or concerning the juror's mental processes in connection therewith....

The Beales argue that it was error to strike the jury responses based on I.R.E. 606(b)

because the Beales did not attempt to directly attack the verdict, but rather, to attack juror conduct during voir dire. The distinction the Beales attempt to draw between "directly" attacking a verdict and "indirectly" attacking the verdict by challenging juror conduct during voir dire is one which is not legally cognizable when analyzing the applicability of I.R.E. 606(b). We hold that the district court properly struck the jurors' responses to the questionnaire.[13]

■ The next basis for the Beales' motion for a new trial is that there was insufficient evidence to support the jury's finding of negligence on Christine Beale's part. *See* I.R.C.P. 59(a)(6). In order to grant a new trial based on insufficiency of the evidence, the trial court must determine both (1) the jury verdict is against the clear weight of the evidence, and (2) a new trial would produce a different result. *Heitz v. Carroll,* 117 Idaho 373, 378, 788 P.2d 188, 193 (1990).

We are unable to conclude that the jury's finding that Christine was five percent negligent was against the clear weight of the evidence or that a new trial would have produced a different result. Accordingly, we uphold the district court's denial of the Beales' motion for a new trial on this ground.

■ Finally, the Beales argue that insufficient damages required a new trial. *See* I.R.C.P. 59(a)(5). In *Quick v. Crane,* 111 Idaho 759, 768–70, 727 P.2d 1187, 1196–98 (1986), our Supreme Court stated:

Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what [the court] would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand.

*Id.* at 768, 727 P.2d at 1196, quoting *Dinneen v. Finch,* 100 Idaho 620, 625, 603 P.2d 575, 580 (1979) (emphasis original). The court further stated:

[S]ince it is a jury function to set the damage award based on its sense of fairness and justice, the trial judge must defer to the jury, *unless* it is apparent to the trial judge that there is a great disparity between the two damage awards and that disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways.

. . . Frequent characterizations have included the idea that the disparity must "shock the conscience" of the trial judge or lead [the judge] to conclude that it would be "unconscionable" to let the damage award stand as the jury set it.

*Id.* at 769–70, 727 P.2d at 1197–98 (citations omitted; emphasis original). If a lesser standard were applied, "successive new trials would be mandated until a jury returned the judge's preordained verdict whenever a judge's weighing of the evidence yielded a verdict different than that of the jury." *Sanchez v. Galey,* 112 Idaho 609, 615, 733 P.2d 1234, 1240 (1986). Based on the evidence presented above, it cannot be said that the jury's award to the Beales "shocks the conscience" or that it was necessarily the result of "passion and prejudice." We therefore reject the Beales' argument. Having considered the arguments made, we hold that the district court properly denied the Beales' motion for a new trial.

### III. DISCRETIONARY COSTS.

Following the trial, the district court, pursuant to I.R.C.P. 68 and 54(d)(1), awarded costs to the Specks by virtue of the fact that they had made an offer of judgment prior to trial for an amount which was greater than that ultimately awarded the Beales by the jury. Included in the costs were discretion-

---

**13.** Moreover, even if the district court had erred in precluding the responses based on Rule 606(b), the Beales have not shown that they were in any way prejudiced by the failure of certain jurors to disclose their bias against chiropractors during voir dire. When jury misconduct is alleged, there must be a showing of prejudice. *Pacheco, supra; Black v. Reynolds,* 109 Idaho 277, 707 P.2d 388 (1985). In the instant case, both the Beales and the Specks presented chiropractors as witnesses. Therefore, there is no reason that juror bias against chiropractors would influence the jury in favor of one party over the other.

ary costs, made pursuant to I.R.C.P. 54(d)(1)(D), for the Specks' experts, Dr. Sears and Dr. Zografos, in the amounts of $4,375 and $3,217.50 for each witness, respectively. The Beales argue that the district court erred in awarding the Specks expert witness fees in excess of $500 per witness, the amount allowed as a matter of right under I.R.C.P. 54(d)(1)(C)(8). This rule provides:

> Costs as a Matter of Right. When costs are awarded to a party, such party shall be entitled to the following costs, actually paid, as a matter of right:
>
> . . . . .
>
> 8. Reasonable expert witness fees for an expert who testifies at a deposition or at a trial of an action not to exceed the sum of $500 for each expert witness for all appearances.

I.R.C.P. 54(d)(1)(C)(8). In addition, Rule 54(d)(1)(D) states:

> Discretionary Costs. Additional items of cost not enumerated in, or in an amount in excess of that listed in subparagraph (C), may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party. The trial court, in ruling upon objections to such discretionary costs contained in the memorandum of costs, shall make express findings as to why such specific item of discretionary cost should or should not be allowed.

The Beales argue that under Rule 54(d)(1)(D), an award of expert witness fees in excess of $500 per expert requires the Specks to demonstrate, and the district court to make specific findings, that the costs were necessary, exceptional, and reasonably incurred. *See Fuller v. Wolters,* 119 Idaho 415, 424–25, 807 P.2d 633, 642–43 (1991); *Turner v. Willis,* 116 Idaho 682, 686, 778 P.2d 804, 808 (1989); *Bodine v. Bodine,* 114 Idaho 163, 167, 754 P.2d 1200, 1204 (Ct.App. 1988). While the Beales assert that no such finding was made, the record demonstrates to the contrary.[14] Accordingly, we hold that district court properly awarded the Specks discretionary costs for their expert witnesses.

## IV. I.C. § 41–1840: CREDIT AGAINST THE BEALES' JUDGMENT.

Prior to the filing of the Beales' complaint, the Specks' insurer extended to the Beales payments in the amount of $16,801.54. The Beales argued below and assert on appeal that amounts prepaid for day care wages, house cleaning services, and towing should not have been credited against the damages found by the jury. They assert that because the Specks' insurer had prepaid the Beales for these losses, the Beales did not seek recovery of them and did not submit evidence on these damages precisely. Consequently, they argue, no part of the jury award could be for these same damages. They maintain that I.C. § 41–1840 does not permit credit to the Specks for these amounts.[15]

---

14. In its "Decision and Order Re Costs," the district court made the following findings:

> Plaintiffs have objected to certain of the defendants' costs contained in their Memorandum of Costs. Subsection (d)(1)(C) permits such an award upon a showing that such costs were necessary and exceptional costs reasonably incurred, and which should in the interest of justice be assessed against the plaintiffs. Under the facts of this case, it was essential for the defendants to obtain an independent medical examination, depose plaintiffs' expert witnesses and to present the testimony of medical experts to rebut the plaintiffs' contentions regarding the extent of damages caused them as a result of the accident. That was the primary focus of the case, and the costs incurred in obtaining such rebuttal evidence were reasonable and justified under the circumstances. The defendants are entitled to discretionary

costs which extend beyond the $20/day appearance fee for witnesses contained in subsection (d)(1)(C)(2) and reasonable expert witness fees beyond $500 per expert.

> This Court finds that the following discretionary costs all of which were incurred after plaintiffs rejected the offer of judgment, were reasonable and justified under the circumstances, and should in the interests of justice be awarded the defendants under I.R.C.P. 68
> ...

(citations omitted).

15. I.C. § 41–1840 states:

> (2) All such [pre]payments [of claims] shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefor in such an action against, the payor or his insur-

■ In its Opinion and Order Regarding Motion for Credit Against the Judgment, the district court stated:

> [T]here is no restriction in the statute that the advances made are creditable only if they are sought by the plaintiffs at trial. The record reveals that the payments were made. Therefore, the fact that the plaintiffs did not seek compensation for housekeeping expenses, towing bills, travel expenses or recovery for lost day care earnings prior to the time the center was shut down is irrelevant.

We disagree with the district court's interpretation of I.C. § 41–1840. Instead, we conclude that the statute restricts the credit allowed for advance payments to those amounts actually sought and received by the plaintiffs at trial. I.C. § 41–1840 specifically states that prepayments "shall be credited upon any settlement with respect to the *same* damage, expense or loss made by, or judgment or award rendered *therefor*" (emphasis added). In accord with the statutory language, the amounts credited must be for the same damages as those recovered by the plaintiff at trial. Moreover, a holding to the contrary would interfere with the jury's ability to award what it deemed appropriate damages for particular injuries. For example, a jury might award a plaintiff a certain sum for pain and suffering, only to have that amount subsequently diminished for an expense not sought by the plaintiff at trial. The jury's award for pain and suffering, therefore, would be for a smaller amount than that which the jury intended. Such a result does not obtain, however, when the credited prepayments are for the same damages sought and recovered by the plaintiff: the jury's award remains intact because the amount taken from the award and credited the defendant represents only those damages which the defendant prepaid.

The Specks argue, however, that if this construction of I.C. § 41–1840 is accepted, an injured claimant could "get around the requirement to reimburse the paying party by not asking for those specific items of damage when suit is filed." This, the Specks contend, would "eviscerate" the purpose of the statute and "[a]lleged tortfeasors would hesitate to assist injured victims for fear that they would not be granted appropriate credit for their efforts."

■ This argument is as unpersuasive as it is perplexing. If a defendant pays a plaintiff amounts the plaintiff has incurred as a result of the defendant's tortious action, and the plaintiff does not then seek to recover for those amounts at trial, the defendant is simply not entitled to credit. In other words, there can be no "requirement" for reimbursement where there is no recovery sought for the same expenses that were previously paid. One of the purposes of the provision allowing credit for prepaid amounts is to prevent double recovery by the plaintiff who receives payments from the defendant or its insurer and then recovers those same amounts as part of his or her judgment. There will be no double recovery, however, if the damages awarded by the jury do not include amounts for losses or injuries which the defendant prepaid the plaintiff.

■ In the instant case, we find no indication in the record that the Beales sought recovery for day care wages, house cleaning services or for towing expenses. Therefore, the Specks were not entitled to credit for those amounts, and we remand for a redetermination of credit.

The Beales also argue that the district court erred in allowing a credit of $1,000 for medical payments. According to the affidavit of Michael Beale, this amount should be deemed a medical coverage payment made to the Beales by their own insurer, Truck Insurance Exchange, which is a member of Farmers Insurance Group of Companies (Farmers Insurance Group). In a counter-affidavit filed by the Specks, an agent for Farmers Insurance Group represented that Farmers Insurance Group includes the separate companies of Truck Insurance Exchange and Farmers Insurance Company of Idaho, the latter of which was the insurer for the vehicle driven by Gregory. The agent further represented that all of the Beales' medical payments were made pursuant to the Specks' policy with Farmers Insurance Com-

er, and in favor of any person to whom or on whose account payment was made.

pany of Idaho rather than under the Beales' policy with Truck Insurance Exchange, and that the Beales never requested payment under their policy, but instead, requested payment under the Specks' policy.

 The Beales challenge Farmers Insurance Group's decision to attribute the payment to the Specks' policy and not to the Beales' policy, and argue that coverage which the Beales had with Truck Insurance Exchange for medical bills, an amount of $1,000, should not have been credited to the Specks. In light of the undisputed evidence showing that the Beales and Specks were insured by two separate companies, that the Beales made no claim against Truck Insurance Exchange and, in fact, requested payment from the Specks' insurer, Farmers Insurance Company of Idaho, the district court properly credited the Specks for $1,000 in medical damages, even though the payment for the same medical bills may have been available from, but was not requested under, the Beales' policy with Truck Insurance Exchange.

## V. ATTORNEY FEES AND COSTS.

The Specks argue that they are entitled to an award of attorney fees and costs on appeal. An award of attorney fees on appeal may be granted under I.C. § 12–121 and I.A.R. 41 to the prevailing party when this Court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably or without foundation. *Excel Leasing Co. v. Christensen*, 115 Idaho 708, 712, 769 P.2d 585, 589 (Ct. App.1989). Costs are allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court. I.A.R. 40(a). As the Specks are not the prevailing party, they are not entitled to attorney fees or costs on appeal. Pursuant to Rule 40(a), costs are awarded to the Beales.

## CONCLUSION

We hold that the district court erred in granting the Specks' motion to exclude evidence of Gregory's plea of guilty to the charge of following too closely, but that such error was harmless. Additionally, we con-clude that the district court properly denied the Beales' motions for new trial or judgment notwithstanding the verdict and properly awarded discretionary costs for the Specks' expert witnesses. Finally, we hold that the district court erred in crediting the Specks for amounts prepaid for day care wages, house cleaning services and towing expenses and remand for a redetermination of credit in accord with this opinion.

No attorney fees. Costs to appellants.

LANSING, J., and SWANSTROM, J., Pro Tem., concur.